24 P.(2d) 1105

## AMERICAN NAT. BANK OF TUCUMCARI v. TRINIDAD BEAN & ELEVATOR CO.

### No. 3776.

Supreme Court of New Mexico.

Sept. 2, 1933.

SADLER, Justice.

The appellee, the American National Bank of Tucumcari, is defending before us a judgment recovered by it in the district court of Quay county against Trinidad Bean & Elevator Company, the appellant, for the nonpayment of four certain drafts drawn upon appellant by one H. J. Ward then doing business at Tucumcari under the trade-name of Tucumcari Produce Company. The drafts were all payable to the order of Tucumcari Produce Company and indorsed in its name by the said Ward. Upon their deposit in appellee bank, the amount of each draft was placed to credit of the payee and subsequently dishonored when presented to appellant for payment. The present suit followed, with judgment for appellee as indicated. We shall not proceed further without stating sufficient of the facts to render understandable the position of the parties.

During the summer and early fall of 1929, the above-mentioned Ward, operating as Tucumcari Produce Company, appears to have been engaged as a wheat buyer in the vicinity of Tucumcari under some arrangement with appellant, all the details of which are not before us. This much, however, does appear: That appellant was obligated to pay Ward 100 per cent. for the wheat purchased at appellant's quotations; he (Ward) guaranteeing weights and grades upon all shipments made.

Subsequent to the arrangement between Ward and appellant, and apparently through the desire of Ward to render immediately

Frank H. Hall, of Trinidad, Colo., Irwin S. Moise, of Santa Rosa, and James L. Briscoe, of Tucumcari, for appellant.

Carl A. Hatch, of Clovis, and Stonewall Pritchett, of Tucumcari, for appellee.

available funds to meet checks given in payment of wheat purchased, he discussed the matter with the president of appellee bank, exhibiting to him a copy of his contract with appellant. This officer, not feeling "exactly satisfied regarding the contract," placed a long-distance telephone call to Trinidad for Trinidad Bean & Elevator Company, the appellant, and conversed with some one whose identity is not disclosed, regarding Ward's contract and operations.

Upon the day following the conversation over the telephone, and apparently as a result of it and a conversation had in the meantime between officers of appellant and Ward, the appellant dispatched to appellee a telegram and letter, reading as follows:

"Trinidad Colo 322P Jul 1 1929.

"American National Bank Tucumcari NMex

"You may use this telegram as our guarantee to pay Mr Ward one hundred percent for wheat purchased at our quotations with understanding however that Mr Ward guarantee weights and grades on all shipments in accordance with our contract

"The Trinidad Bean and Elevator Co."

"Trinidad, Colo. July First, 1929.

"American National Bank, Tucumcari, New Mexico.

"Gentlemen: This letter confirms our wire this afternoon having reference to a contract made with Mr. H. J. Ward of your city for the buying of wheat.

"In talking to Mr. Ward this afternoon he mentioned that you had requested us to guarantee to pay Mr. Ward 100% of the amount due on purchases from him at our quotations. This of course was entirely satisfactory because it is simply what we would have expected to do, and under no circumstances would we handle in any other manner. However, in accordance with the terms of the contract, Mr. Ward is to guarantee the weights and grades of such shipments of wheat at the destinations. Final settlement of shipments cannot be made until the car reaches the destination and the papers issued at that point, because we ourselves do not know what the grade will be or the extent of the contents.

"So that there would be no misunderstanding with you, and as requested by Mr. Ward, we wired you today that we would guarantee payment in full of all purchases, with the understanding that Mr. Ward guarantee the weights and grades on all shipments, in accordance with our contract.

"We hope that our manner of handling has been entirely satisfactory, also that our arrangement with Mr. Ward will prove mutually profitable and of some benefit to you.

"Very truly yours,

"The Trinidad Bean & Elevator Company."

All of the matters related preceded the extension of credit by appellee upon any of Ward's drafts on appellant. Subsequently, seventeen drafts for wheat purchased and consigned to appellant or to its order were drawn on appellant by Ward and deposited with appellee. The amount of each was placed to credit of Tucumcari Produce Company, Ward's trade-name, and upon presentment they were

duly paid by appellant. Then followed the four drafts in suit. Two of the four were first returned because of the absence of the signature of Ward to a form of certificate appended to each reciting that the grain it represented was on hand as the property of appellant and held subject to its order. The missing signature was furnished, and presently all four drafts were dishonored as not representing purchases of wheat.

It is readily apparent that the decision of this case will be controlled by a determination upon which party trust in Ward is to be imposed from the record before us. Each party contends it is the other which must bear the consequences of that misplaced trust. If the details of the telephone conversation between the president of appellee bank and the unidentified person presuming to talk for appellant from its place of business in Trinidad are properly to be considered, we could the more readily admit the correctness of the trial court's decision.

■ But the reception in evidence of the details of this telephone conversation was challenged upon two grounds: First, that the person purportedly talking for appellant was not identified; and, second, that the two writings relied upon as containing the guaranty of payment of Ward's drafts merged all previous oral communications; the tendered conversation being declared immaterial in its tendency to vary or contradict the same. We see no merit in the first ground of objection. Upon appellee's offer to keep the case open for the purpose of identifying the person talking

from appellant's place of business, appellant's counsel stated it was not his desire that such be done. This was a waiver of further proof on the point.

Something should be added as to the course of proceedings antecedent to judgment before disposing of the second ground of objection to the admissibility of the telephone conversation. The case was decided upon a demurrer to the evidence interposed by appellant at the close of appellee's case as a challenge to the sufficiency of the proof to support a judgment for appellee. The appellant stood upon the trial court's action in overruling the demurrer, and itself produced no evidence. It requested, and the trial court denied, a finding that the telegram and letter alone evidenced whatever assurance was extended to appellant by appellee.

In its complaint appellee alleged Ward to be the agent of appellant for the purpose of buying wheat for it, agreeing to pay him 100 per cent. for wheat purchased at its quotations, and to pay appellee the drafts drawn on it by Ward for the purpose of enabling him to purchase wheat and pay for the same, subject only to the condition that Ward guarantee to it weights and grades of wheat purchased. Appellee further alleged: "That such guaranty and agreement with this plaintiff on the part of said defendant, consisted of telegrams and letters, as will be hereinafter set forth."

And further alleged: "A copy of the telegram of guaranty from the defendant to the plaintiff is hereto attached, marked Exhibit 'B,' and made a part of this complaint; a

copy of the letter confirming said telegram is also attached, marked Exhibit 'C,' and made a part hereof."

It was solely upon the view that the conversation over the telephone merely explained, but did not alter or change, the assurance extended by the telegram and letter, that the trial court permitted appellee's president to give in evidence the details of such conversation. The writings were relied upon in the complaint and at the trial as constituting the guaranty. The telephone conversation was not mentioned in the complaint. At the trial, however, and in this court, its admissibility is defended upon the ground that it tends to explain the assurance extended in the letter and telegram.

 As we view the matter, the clear purport of the telephone conversation is to change entirely the scope of the assurance extended by the writings. It seems fairly deducible from them that the bank was contemplating an extension of credit to some one in connection with purchases of wheat by Ward. Otherwise its inquiry would have disclosed it as an officious intermeddler into the affairs of Ward and appellant. And what arrangement was more likely in contemplation than that actually pursued in the handling of drafts drawn by Ward on appellant?

Under the writings appellant assures appellee that it will pay Ward 100 per cent. for wheat purchased at its quotations; Ward guaranteeing weights and grades at destination. And appellee is admonished: "Final settlements of shipments cannot be made until the car reaches the destination and the papers issued at that point, because we ourselves do not know what the grade will be or the extent of contents."

These writings were calculated to reassure appellee bank that, if it should extend credit to Ward on drafts covering *purchases of wheat*, it would not suffer loss due to a decline in the market, with the warning, nevertheless, that loss might occur from discrepancies in weights or grades guaranteed by Ward. The writings plainly contain no guaranty or assurance whatever that appellant will pay any draft, except "for wheat purchased." Their clear purport is directly opposite. And the trial court refused to find that the drafts in question represented purchases of wheat.

But, when we consider the telephone conversation, an entirely different meaning appears. If accepted, it shows an explanation to appellant that Ward desired to draw each day for the purchases made during the day and appellant's reply that such was its intention, followed by an oral promise to pay the drafts. Under such a plan it would be impractical, if not impossible, for the bank to verify Ward's purchases before extending credit on the drafts. Quite naturally such an arrangement, as held by the authorities cited in the trial court's memorandum opinion, imposed no duty on the bank to look beyond the representation of the drawer.

Our analysis reduces the matter to this: Under the writings alone the bank trusted Ward. The telephone conversation transforms the person trusting and the consequenc-

es of a breach of the trust from the bank to appellant. So viewing the matter, we must hold the telephone conversation inadmissible. Without this conversation in evidence, neither agency, the basis of the trial court's conclusion of liability, nor an assurance broad enough to cover appellee's claim of liability, is established.

We have felt justified in indulging the inference that the writings related to the handling of drafts, since both parties agree that such was the case. The appellee in its complaint so declares, and appellant in a letter following dishonor of the drafts so admits. It will be observed, however, that the writings thus relied on themselves make no mention of drafts. They were merely an assurance from appellant to appellee to pay Ward 100 per cent. for wheat purchased at its quotations, subject only to the latter's guaranty of weights and grades.

But it is unnecessary in support of our decision to infer what the parties admit—that the particular transaction which the writings contemplated was the handling of drafts. The writings are plain and unambiguous. They do not require explanation. They do not admit of it in derogation of the assurance extended, either the one way or the other. The appellee would no more be denied recovery for a loss within the guaranty, although wholly disconnected from draft transactions, than permitted to avail itself of one outside it.

Let us suppose that, instead of advancing money on drafts, the appellee had loaned Ward the money on notes with which to purchase wheat, having as security for repayment an assignment of his expected returns on the basis of the guaranty contained in the writings. If, under such circumstances, appellant's breach of the guaranty should result in loss to appellee, the appellant's mouth would be just as effectually closed against showing that the guaranty related solely to drafts as is appellee's against proving that appellant's guaranty was to pay Ward a price certain, not alone for wheat *actually* purchased, as promised in the writings, but also for wheat *represented* by him to have been, but not in fact, purchased.

It follows that the judgment of the lower court should be reversed, and the cause remanded, with directions to set aside the judgment heretofore rendered and enter judgment for appellant. The appellant will recover its costs. It is so ordered.

WATSON, C. J., and HUDSPETH and ZINN, JJ., concur.

BICKLEY, Justice (dissenting).

The complaint alleges that defendant entered into an arrangement and agreement with Ward by which the defendant (appellant) "appointed, constituted and designated the said H. J. Ward its agent within and for the City of Tucumcari and County of Quay, New Mexico, for the purpose of buying wheat for it, the said Trinidad Bean & Elevator Company."

The trial court, viewing the course of dealing disclosed by the evidence and the written

admission of defendant that: "When our arrangement was made with Mr. Ward to buy wheat for us, a wire was sent to you," etc., found: "That Ward was the agent of defendant, and acted as such."

In view of the rule stated in Davis & Carruth v. Valley Merc. & Banking Co., 33 N. M. 295, 265 P. 35, 37, that on a demurrer to the evidence the appellate court is required to assume that "all of the evidence before the court which tends to establish the plaintiffs' case is true with all reasonable inferences to be drawn therefrom, and to view such evidence in the aspect most favorable to the plaintiff," I conclude that the trial court's finding is supported by substantial evidence:

The complaint proceeds to allege:

"III. That in order to carry out the terms of its contract with the said Ward and to enable him to purchase grain and pay for the same, the defendant agreed to guarantee to pay to said H. J. Ward, 100% for wheat purchased at quotations to be furnished by The Trinidad Bean & Elevator Company, *and further agreed with this plaintiff to pay this plaintiff the drafts drawn by the said Ward, subject only to the condition that Ward guaranteed to it, the defendant, any discrepancies in weights or grades of wheat purchased.*

"IV. That such guaranty and agreement with this plaintiff on the part of the said defendant, consisted of telegrams and letters, as will be hereinafter set forth."

Mr. Foyil, President of the plaintiff bank, testified among other things that Ward **had**

exhibited to him a written contract between himself and defendant elevator company, and:

"A. I didn't feel exactly satisfied regarding the contract, and I realized that would become necessary for the purpose of cashing a draft drawn on the Trinidad Bean and Elevator Company, and I called the Company over long distance and talked with them. Mr. Ward said there was wheat at different places ready to be bought, and exhibited *forms of drafts*, etc., that he was to draw for funds on the Bean and Elevator Company, and as I recall—

"Q. (interrupting). That is, you told them that in the telephone conversation? A. Yes sir, If they would pay the drafts, yes sir. Mr. Ward *wanted to buy wheat during the day and draw in the afternoon* on the Bean Company for the full amount of wheat bought that day. So I didn't have any way of verifying these transactions in the day, so in the conversation with the party at the other end of the line presumed to represent the Bean Company, *they said it was the intention he should draw each day for the wheat bought that day*, to draw a draft. And he exhibited the *form of draft to be used, stating the quantity*, one of these drafts to be deposited in his Company's name, on which he had been drawing checks for the payment of wheat in small lots." (Italics mine.)

He also testified that 17 similar drafts were drawn by Mr. Ward and were paid by appellant before any were refused, and that, when the refused ones were first presented,

the only reason assigned for, the refusal was that signature of Ward to the certificate was missing. He also testified that the drafts were all of the same type as to form, and were printed, and were presented to him for examination by Mr. Ward.

It is very apparent that the telegram does not fully "define the nature and qualities of the subject matter, the situation and relation of the parties, and all the circumstances."

The majority have found it necessary to indulge in inferences and look to the pleading of plaintiff and the admissions of defendant in order to relate the writings to the handling of drafts. Minus these inferences, pleading, and admissions, the writings "started nowhere in particular and arrived where they started."

The complaint was attacked by demurrer; the attack being based in part upon the ground that the cause of action was based upon the telegram and letter. The demurrer was overruled, and the defendant answered principally by way of denials, denying specifically that Ward was the agent of defendant and that defendant made any agreement with plaintiff to pay any drafts that might be drawn by the said Ward. If any error was committed by the trial court, it was in not sustaining defendant's demurrer to the complaint. Since the defendant did not stand upon its demurrer, but went to trial on the issues of agency of Ward and the direct promise by the defendant to the plaintiff to pay drafts drawn by the defendant through its agent, the question presented by such demurrer is not now open to review.

A similar question was again presented when plaintiff offered testimony of an oral agreement and understanding between plaintiff and defendant. It was urged that such oral agreement and understanding was not within the issues, and that it varied the terms of a written contract. The first of these grounds, having been previously decided by the ruling on the demurrer, requires no further discussion. I accept as reasonable the construction placed upon the pleadings by the trial court. I think the trial court properly concluded that the lawsuit was not an action upon a written instrument, in the sense that one brings a suit to recover upon a note, any more than one seeking to establish a water right under the Irrigation Code, and who sets out in his pleading a copy of the permit to appropriate water issued by the state engineer, as being an important and perhaps essential part of his cause of action, may be said to be suing upon a written instrument. Doubtless, the writings in the case at bar were important as a part of plaintiff's cause of action, but they were not the whole thing. Counsel for plaintiff would be convicted of great temerity to assert in the complaint that they relied on proving the issues of agency of Ward and a promise of defendant to pay such agent's drafts by the telegram and letter alone.

There seems to have been some confusion at the trial, but it seems to me that the majority have taken too technical a view. In

Locke v. Murdoch, 20 N. M. 522, 151 P. 298, 300, L. R. A. 1917B, 267, the parol evidence rule was under consideration, and we said: "The courts seem to agree that the question at bar presents a recurring difficulty, not because of the rule itself, but because of the application of the exceptions which appellee invokes," and adopted the definition found in Jones on Evidence as being well settled.

"The general rule under discussion is not violated by allowing parol evidence to be given of the contents of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement. The exception is thus stated somewhat more guardedly by Mr. Stephen: 'The parties may prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final settlement of the whole transaction between them.'"

In Strickland v. Johnson, 21 N. M. 599, 157 P. 142, 144, we quoted with approval as follows:

"Where the agreement between the parties is one and entire, and only a part of this is reduced to writing, it would seem that the residue may be proved by extrinsic evidence." 2 Parsons on Contracts, § 553.

In Schwentker v. Hubbs, 21 N. M. 188, 153 P. 68, we decided:

"Parol evidence is admissible, in the construction of contracts, to define the nature and qualities of the subject-matter, the situation and relations of the parties, and all the circumstances, in order that the courts may put themselves in the place of the parties, see how the terms of the instrument affect the subject-matter, and ascertain the signification which ought to be given to any phrase or term in the contract which is ambiguous or susceptible of more than one interpretation, and this, although the result of the evidence may be to contradict the usual meaning of terms and phrases used in the contract, but, if the words are clear and unambiguous, a contrary intention may not be derived from the circumstances."

The majority say: "The writings are plain and unambiguous. They do not require explanation."

My inability to agree with this view, and my inability to see the writings as a complete contract with the plaintiff, is the cause of this dissent.

When the telegram was offered in evidence, it was objected to because it did not throw any light on the issues in the case, and did not establish any responsibility of the defendant, and did not establish the agency of Ward or in any way bind the defendant to the plaintiff, or authorize the payment of any funds or advancing of any money. When the letter was offered, it was objected to for the same reasons.

The testimony as to the "arrangement" existing as shown by the oral conversations was

objected to because the whole agreement was expressed in the telegram and letter.

In appellant's brief it is stated: "The telegram was for the purpose of communicating ·certain information to the plaintiff without ·delay. The letter was for the purpose of making more definite the same information. The telegram was effective only until the letter was received by the plaintiff. It was clearly the intention that the letter should cover the entire situation and that after the receipt of the letter the telegram was to be no longer considered. That the letter did cover the entire situation can hardly be questioned. The letter and the telegram are quoted in full in the Statement of Facts in this brief."

Again appellant says: "Looking at this letter from a common sense point of view, what is its reasonable meaning? It can mean just one thing; that it was assurance that the Elevator Company would pay Ward in full for wheat purchased at their quotations and sold them in accordance with their contract with Ward."

In other words, what the defendant did guarantee was the performance of its own contract with Ward guaranteeing to do the thing they would be legally bound to do without any letter or telegram to the Bank. And yet the defendant put its own construction upon the letter and telegram, saying in a letter to the bank: "A wire was sent to you which was confirming my letter in which we

guarantee to pay drafts drawn on us by Mr. Ward which covered the purchase of wheat."

Again, in the brief of appellant, it is said: "This letter and telegram remind us of an eight-year old boy running on an errand for his mother. The writer started nowhere in particular and arrived where he started."

I think these writings do require explanation, and that the oral testimony as to the subject-matter, the situation and relationship of the parties and the surrounding circumstances is essential to such explanation. Also the rule should not be invoked so strictly in case of writings unilateral in form. Jones on Ev. § 1491.

Another thing worthy of note is that, though appellant states twenty-four "Points Relied Upon for Reversal," the reception of the evidence by the trial court which is now excluded by the majority is not one of them. Appellee expresses some chagrin in its reply brief at not having made a point of it, and explained that the reason for the omission was that it did not consider it material, and, having changed its mind, devotes some attention to it. If the oral testimony in question is not excluded, it appears from all the evidence and inferences to be drawn therefrom that Ward was defendant's agent, that as such he presented printed forms of drafts either prepared by or acquiesced in by the defendant, upon which appeared a certificate as follows:

"Certificate

"The undersigned certifies that the above grain is now on hand in his possession and is

now the property of The Trinidad Bean & Elevator Co., and is being held subject to their order.

"_____."

Each of the drafts also bore a memorandum as follows: "This draft is not valid unless attached certificate is properly filled out," and that defendant elevator company agreed to pay the drafts drawn by Ward, its agent, for the purchase of wheat. And that it agreed to the methods of handling the drafts, that is, that Ward should draw a draft each day for the wheat bought that day, and further that the elevator company fixed its own evidentiary test as to whether the wheat had been bought by prescribing a form of certificate attached to each draft, which Ward was to sign. This certificate likewise afforded the protection demanded in the telegram, and letter, "that Mr. Ward guarantee weights and grades on all shipments in accordance with our contract." In view of the evidence of the course of dealing wherein it is shown that the elevator company paid seventeen drafts under such arrangement, and then, when it first refused to pay two of the four drafts in question, the refusal was based solely upon the ground that the form of certificate did not contain Mr. Ward's signature, I find it easy to agree with the trial court that, when the bank had procured the execution of this certificate by the defendant's agent Ward, that this discharged the burden upon the bank that Ward had purchased wheat and guaranteed weights and grades thereof, and that

there was no duty upon the Bank's officers to exercise a surveillance over Ward, the defendant's agent. This agent of the defendant drawing a draft represented that he had purchased wheat. I think the principal was bound by the representations of the agent and that the Bank had a right to rely upon such representations without inquiring further.

Appellant cites a number of cases dealing with what is, and what is not, acceptance of drafts by the drawee. We need not go into that because of the element of agency which is established in the case at bar. In First Nat. Bank v. Home Insurance Co., 16 N. M. 66, 113 P. 815, the territorial Supreme Court decided: "In an action brought to recover on a draft, the complaint alleged that the draft was drawn by an agent on his principal by authority of the principal, that the draft was presented, payment refused, and that same is still unpaid. Held, to be good on a demurrer for failure to state facts sufficient to constitute a cause of action, for the reason that 'a draft drawn by an agent on his principal by authority of the principal is equivalent to a draft drawn by the principal himself, and need not be accepted by the drawee in order to bind it.'"

After a careful consideration of the entire record, I find myself unable to yield acquiescence to the view that the judgment of the trial court should be reversed. I therefore dissent.