JOSEPH R. BERTINI, Indiv. and as Adm'r of the Estate of Michael J. Bertini, Deceased, Plaintiff-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.—(CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, Defendant-Appellee.)

First District (4th Division)   No. 76-161

Opinion filed May 5, 1977.—Rehearing denied June 2, 1977.

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant.

Peter D. Corti, of Karlin and Fleisher, of Chicago, for appellee Joseph R. Bertini.

Arthur H. Barton, of Chicago (David F. Holland, of counsel), for appellee Central National Insurance Company of Omaha.

Mr. JUSTICE ROMITI delivered the opinion of the court:

This appeal involves an action for declaratory judgment instituted by plaintiff, Joseph R. Bertini, individually and as administrator of the estate of Michael J. Bertini, deceased, against State Farm Mutual Automobile Insurance Co. (State Farm) and Central National Insurance Company of Omaha (Central).

The issues in this case are two: whether an automobile insurer can limit uninsured motorist coverage to the named insured although it affords liability coverage to omnibus insureds, albeit through an escape clause, and whether an insurer issuing three policies to the same insured can escape liability through reliance on an escape clause where there is primary insurance in the minimum amount.

We reverse and remand with directions.

The facts in this case are undisputed. On August 18, 1972, Michael J. Bertini died when the motorcycle he was riding was struck by an automobile driven by an uninsured motorist. Michael Bertini allegedly was a resident of his father's household, Joseph Bertini, who is the plaintiff in this action, both individually and as administrator of Michael's estate.

Joseph Bertini at the time of the accident owned three automobiles which were insured by three separate policies issued by State Farm, one of the defendants in this action. Each of these policies provides uninsured motorist coverage with the minimum $10,000/$20,000 limits required by statute. If the deceased was in fact a member of his father's household, as alleged, then clearly he was insured under the policies. (7 Appleman, Insurance Law & Practice §4331 (1962).) There has been no contention on appeal that the deceased was not an insured under State Farm's policies.

All of State Farm's policies contain "other insurance" clauses. In two of the policies the clause reads:

"Under coverage U with respect to bodily injury to an insured while occupying a motor vehicle not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

Subject to the foregoing paragraph, under coverage U if the insured has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this coverage for a greater proportion if the applicable limit of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

In the policy covering the third vehicle, to-wit, a Chevrolet station wagon, the language of the other insurance clause is identical except that the excess clause is only applicable when the insured is occupying an *automobile* not owned by a named insured under the coverage.

The motorcycle the deceased was riding at the time of the accident was owned by Michael Shanahan, and insured by Central. The Family Protection Coverage (Uninsured Motorist Coverage) endorsement limits its coverage to the named insured as stated in the policy. The liability portion of the policy covered besides the named insured:

"(b) any other person using or legally responsible for the use of an insured vehicle covered by this policy with the permission of the named insured, only if such other person (1) has no liability insurance of his (her) own, either primary or excess, or (2) is not included in 'Persons Injured' or 'Definition of Insured' in any other liability insurance policy, either primary or excess. Insurance afforded by this sub paragraph (b) shall not exceed the minimum limit of liability specified in the Financial Responsibility Law of the state in which the accident occurs. However, if such person has another policy available but said other policy has limits less than the minimum specified in the Financial Responsibility Law of the state in which the accident occurs, then this policy shall apply only as excess insurance for the difference between said minimum limits and the limits under said other policy * * *."

When both insurance companies refused to arbitrate the plaintiff's claim, he brought a declaratory judgment action against both insurers seeking a declaration of coverage and an order to arbitrate. The trial court ruled that Central afforded no coverage and that the total amount of insurance available under the State Farm policies, for the payment of plaintiff's claim was $30,000.

I.

■■■ Since if there is no other insurance, the other insurance clauses of State Farm's policies do not come into play (8 Appleman, Insurance Law and Practice §4914 (1962)), and under the authority of *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, State Farm would, as the trial court held, be liable for $30,000, we must first determine whether Central's policy afforded the plaintiff uninsured motorist coverage protection. Clearly, if the limitation of coverage to the named insured in the endorsement is valid, Bertini, who was not a named insured, was not covered. To determine the limitation's validity, we must look at section 143a of the Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 755a), since, while generally the parties are free to make their own contract (12 Appleman, Insurance Law and Practice §7005 (1943); 13 Appleman, Insurance Law and Practice §7381 (1976)), statutes which are in force at the time the policy was issued are controlling, and policy provisions in conflict with the statute are void. (12 Appleman, Insurance Law and Practice § 7041 (1943).) Nor, contrary to Central's contentions, does the approval by the Insurance Commissioner of a particular provision or policy, validate a provision which is void as contrary to statute. *American Motorists Insurance Co. v. Thompson* (1969), 253 Ore. 76, 453 P.2d 164; *American Liberty Insurance Co. v.*

*Ranzau* (Tex. 1972), 481 S.W.2d 793; 19 Appleman, Insurance Law and Practice §10425 (1946); 7 Appleman, Insurance Law and Practice §4331 (1962).

Section 143a of the Insurance Code requires that all persons insured under the liability portion of an automobile liability policy be protected under the Uninsured Motorist Coverage. As stated by the court in *Roach v. Central National Insurance Co.* (1975), 60 Mich. App. 40, 47, 230 N.W.2d 297, 301, which construed a practically identical statute:

> "The clear purpose and the mandatory language of the statute require that uninsured motorist coverage must be provided to the same persons included as insureds in the liability policy. When the provisions of a policy of insurance differ or vary from this statutory requirement, they must be read into the provisions of the policy."

Thus if one is an insured for the purpose of liability protection, he is deemed an insured for the purpose of uninsured motorist protection. *Rice v. Detroit Automobile Inter-Insurance Exchange* (1976), 66 Mich. App. 600, 239 N.W.2d 675.

Accordingly, the threshold issue before us is whether the deceased was insured under the liability portion of Central's policy. If he was, then the limitation of coverage in the uninsured motorist portion was invalid.

The provision in Central's policy affording omnibus insureds liability coverage only if they have no other insurance, either primary or excess, is commonly known as an "escape" clause. Many courts have enforced this provision (8 Appleman, Insurance Law and Practice §4914 (1962)), particularly where, as here, it appears not in the "Other Insurance" section of the policy but in that section designating the persons insured. Others have not. Illinois is one of the latter. Our supreme court in *Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.* (1971), 49 Ill. 2d 108, 273 N.E.2d 360 ruled that an escape clause, similar in language to the one in Central's policy, was ineffective to relieve the owner's insurer from affording primary coverage to the omnibus insured, even though he was, in fact, covered by other insurance. That case is controlling here. And since Central's policy did afford the deceased liability protection, indeed primary protection, the limitation in the uninsured motorist coverage was void.

■■ Central's policy which had the usual "pro-rata" clause affords primary coverage since it insured the accident vehicle. Normally it alone would afford primary coverage and any policies insuring the driver would provide only excess coverage. (7 Appleman, Insurance Law and Practice §4331 (1962); 8 Appleman, Insurance Law and Practice §4914 (1962).) Nevertheless the policy language controls the relationships between the

insurers and if State Farm's policies do not have excess clauses which apply to the accident involved here, then its and Central's pro rata clause will govern and the coverages will be prorated.

■■■ Two of State Farm's three policies provide that their coverage will be excess over any other available coverage if the insured at the time of the accident was occupying a motor vehicle not owned by the named insured. Since a motorcycle clearly is a motor vehicle, the excess clause in these policies do apply and the coverage is excess over Central's. (*Vignali v. Farmers Equitable Insurance Co.* (1966), 71 Ill. App. 2d 114, 216 N.E.2d 827.) However the third policy covering the Chevrolet station wagon provided instead only that its coverage should be excess if the insured was occupying an automobile not owned by the named insured. A motorcycle is not an automobile. (*Home Indemnity Co. v. Hunter* (1972), 7 Ill. App. 3d 786, 288 N.E.2d 879, and see the cases cited in 1A Appleman, Insurance Law and Practice §573 (1965); 7 Appleman, Insurance Law and Practice §§4331, 4455 (1962).) Since, therefore, that policy's excess clause is inapplicable, that policy and Central's must be prorated. Since they both have the same policy limits, the maximum liability on each policy is $5,000.

## II.

■■ The remaining issue is whether State Farm's liability is limited to $5,000 or whether the insured can recover under the other two policies, should the amount of loss be shown to exceed $10,000. The other insurance clause of State Farm's policies is a standard provision which under the excess-escape clause precludes any recovery unless the limits of the policy exceed those of the primary policy and when the excess-escape clause is not applicable limits recovery to the higher of the applicable limits of liability of whatever policies are applicable. Unlike the majority of states, Illinois has upheld the validity of the other insurance clause, or at least the "excess-escape" portion of it where policies issued to different insureds were involved, even where the insured was unable to recover the minimum $10,000 under the primary policy. *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97.

But as stated in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335-37, 312 N.E.2d 243, 250-51:

> "There is, however, a distinguishing factor in this case [from *Putnam* and *Morelock*]. Here one insurer issued three different policies on three separate vehicles to one insured. Each policy provided separate uninsured-motorist coverage under Part IV, and medical-payments coverage under Part II, and a separate premium

was accepted by the insurer from the insured for those coverages. An insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued. *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 415.

When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the 'other insurance' clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not. The apparent purpose of 'other insurance' clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company. There is no purpose in proration unless the 'other insurance' is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured. *United Services Automobile Association v. Dokter* (1970), 86 Nev. 917, 920, 478 P.2d 583, 585; *Sturdy v. Allied Mutual Insurance Co.* (1969), 203 Kan. 783, 457 P.2d 34; see also *Deterding v. State Farm Mutual Automobile Insurance Co.* (1966), 78 Ill. App. 2d 29, 36.

It is true that an insured might end up in a case such as this in a better situation than if the wrongdoer had been insured to the minimum requirements of the Financial Responsibility Law. That, however, is not material as long as he pays for the coverage. The insured is better off because he paid additional premiums. If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them. [Citation.] We conclude that the plaintiff is entitled to recover up to $30,000 under the three uninsured-motorist coverages, not to exceed, however, the total damages sustained."

■■ Following the rationale set forth in *Glidden*, we should treat the three policies, in this situation, as if the insured had had one, affording $30,000/$60,000 uninsured motorist coverage. And since the $30,000 limit exceeds the $10,000 limit of Central's policy by $20,000, we find, applying the excess clause, that the extent of State Farm's potential liability is $25,000 ($5,000 under the first policy since that is prorated with Central's and $20,000 under the other two).

This approach is not novel. In States such as Louisiana and Florida

where by statute a person insured by uninsured motorist coverage may recover from his own insurer the difference between the liability limits of the tortfeasor and those of his own uninsured motorist coverage where the latter is higher, the courts have, in determining whether the uninsured motorist coverage did exceed the limits of the tortfeasor's liability coverage stacked together the limits of the uninsured motorist coverage available to the insured. (*Phillips v. Barraza* (La. App. 1975), 320 So.2d 587; *State Farm Mutual Automobile Insurance Co. v. White* (Fla. App. 1976), 330 So.2d 858.) Thus in *White*, where the injured party, as here, maintained three separate polices on three separate vehicles each with the minimum $10,000 uninsured motorist coverage, the insured was determined to have an aggregate uninsured motorist coverage of $30,000 and he was entitled to recover the difference ($20,000) between that $30,000 and the tortfeasor's $10,000 liability limits.

We are aware that the fourth district has reached the opposite result in *Winkler v. State Farm Mutual Automobile Insurance Co.* (1976), 35 Ill. App. 3d 493, 341 N.E.2d 379. We find that case not to be persuasive. The court there found *Glidden* not to be applicable since in *Glidden* the excess-escape clause was not involved and ruled that each of the three excess-escape clauses served a purpose by providing for a determination of the insurer's liability, in relation to the coverage provided by another insurer. But in fact, both the pro rata clause in uninsured motorist coverage and the excess-escape clause serve the same two purposes. The first is to govern the liability as between two or more insurers when the insured might be able to recover from more than one. The second is to limit the insurer's total liability towards its insureds to the limits of one policy. Our decision in this case has in no way failed to achieve the first purpose; it has merely, following *Glidden*, refused to carry out the second to the extent that the policies were issued by the same insurer to the same insured. As to those three policies, the same ambiguity is present as was present in the policies involved in *Glidden*.

■■ While it is true that the excess-escape clause was not involved in *Glidden*, it must be noted that the supreme court could simply have distinguished that case from the *Putnam* and *Morelock* cases on that ground but did not choose to do so anywhere in the opinion. Since it did not choose to make that distinction, we do not feel that we can; certainly the expectation of the insured that the "other insurance" clauses in policies issued to him by the same insurer will not reduce his recovery to what he would have obtained under one policy is the same.

For the foregoing reasons the decision of the trial court is reversed and the case remanded to the trial court with instructions to enter an order finding that the maximum liability of Central National Insurance

Company of Omaha in this case is $5,000 and the maximum liability of State Farm Mutual Automobile Insurance Company is $25,000 and ordering the parties to proceed to arbitration unless it should be waived.

Reversed and remanded with directions.

DIERINGER, P. J., and JOHNSON, J., concur.