JUSTIN KAUFMANN *et al.*, Plaintiffs-Appellees, *v.* ECONOMY FIRE AND CASUALTY COMPANY, Defendant-Appellant.

First District (4th Division)   No. 76-551

Opinion filed July 14, 1977.—Rehearing denied November 1, 1977.

LINN, J., dissenting.

Jacobs, Williams & Montgomery, Ltd., of Chicago, for appellant.

Robert M. Higgins and Sidney Z. Karasik, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal of an action for declaratory judgment to construe uninsured motorist liability of an insurance carrier under two separate policies of auto liability insurance, issued by Economy Fire and Casualty Company (Economy) to members of the Kaufmann family. Justin and Geraldine Kaufmann were the named insureds on one policy, and Daniel Kaufmann was the named insured on the other policy. Four members of the Kaufmann family (plaintiffs) were injured in a collision caused by an uninsured third party. Plaintiffs, all being within the definition of insureds under each policy, claimed they were afforded coverage under both policies and the uninsured motorist (family protection) coverages of the two policies should be stacked. Economy invoked the "other insurance" clause of one of the policies, as precluding the aggregating of the insurance, and also maintains a "specific exclusion" clause of one of the policies is in force. The circuit court of Cook County held the coverages of the two policies applied and could be stacked. From a summary judgment in favor of the plaintiffs, Economy has appealed.

Submitted for review are the issues of (1) whether, in the instant factual setting, the "other insurance" clause, which limits coverage to the

maximum single limits scheduled in itself and any other applicable policy, precludes stacking of the uninsured motorist sections of the two policies; and (2) whether a "specific exclusion" making an auto insurance policy inapplicable to bodily injury to an insured while occupying an auto other than an "insured automobile" is a valid restriction in light of mandatory requirements of the uninsured motorist statute in the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, pars. 755a and 1054).

The facts of this case are not disputed. On November 10, 1974, an auto driven by Daniel Kaufmann was struck head-on by an auto driven by an uninsured motorist. Daniel suffered various injuries, as did three passengers in his auto, his parents, Justin and Geraldine Kaufmann, and his brother Judd.

At the time of the accident two insurance policies were arguably available. One policy showed the names Justin and Geraldine as the named insureds and the other policy, written on the auto involved in the accident, showed Daniel as the named insured. These two policies were similar in many respects. For the purposes of our discussion the terms of the policies as to Family Protection Coverage are identical, and the coverage therein was provided, in each case, in consideration of the payment of a $4 premium. By this form contract of insurance, Economy agreed to pay all damages because of injury caused by the operator of an uninsured auto. The limit of this liability is $10,000 per person and $20,000 per accident. Defendants do not dispute that part of the trial court's order which allowed coverage under one policy, nor do they challenge the aggregation of the medical expense coverage under both policies.

The contract of insurance in question contains a provision which extinguishes liability for damages caused by the driver of an uninsured auto when such coverage is applicable under another policy of insurance. The section entitled "Other Insurance" provides:

> "Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
>
> Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit

of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Plaintiffs sued Economy for a declaratory judgment that both policies were in effect, that they were a single family of insureds paying two separate premiums to a single insurance company, and that each family member was twice covered and therefore entitled to aggregated or stacked coverage under the Family Protection provisions of the two policies.

Contending the damages sustained by plaintiffs exceeded $20,000 and the individual damages of Geraldine Kaufmann exceeded $10,000, plaintiffs sought to hold Economy responsible for the total actual damages sustained to the extent of $20,000 per person and $40,000 per accident.

Economy acknowledged plaintiffs were entitled to the coverage given under the Family Protection provisions of the policy issued to Daniel, but contended, by virtue of the "other insurance" clause contained in the policy issued to Justin and Geraldine, the parents' policy afforded no coverage.

On plaintiffs' motion for summary judgment the trial court granted a declaratory judgment, while specifically finding the "other insurance" limitation was inapplicable and ineffective to prevent stacking of the uninsured motorist coverage. From such judgment Economy has filed this appeal.

Insurance covering injuries caused by uninsured motorists is almost universally regulated by statute, and any examination of the problem must begin with the current statutes covering the subject. Uninsured motorist coverage, by State statute, is a required appendage to auto liability policies in Illinois. The Illinois Insurance Code provides, in pertinent part:

"§143a. (1)* * *[N]o policy insuring against lost resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered * * * unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death [of $10,000 per individual and $20,000 per accident] * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom * * *.

* * *

§442. Validation of Illegally Issued Policies.) Any contract or policy of insurance * * * issued in violation of any section of this

> Code requiring certain provisions to be inserted therein * * * shall nevertheless be held valid but shall be construed in accordance with the requirements of the section that the said policy * * * violates, and when any provision in such contract * * * is in conflict with any provision of this Code, the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto." Ill. Rev. Stat. 1973, ch. 73, pars. 755(a) 1054.

Since uninsured motorist coverage is required in auto insurance policies, the likelihood of an injury caused by an uninsured motorist being covered by more than one uninsured motorist endorsement has become great, with the result that insurers have attempted, as with liability policies in general, to provide that coverage in such instances will not be duplicated.

One basic way for an insurance company to limit their liability in this regard is for the parties to agree no coverage applies where coverage is provided by other insurance. Other insurance clauses many times are in the form of excess-escape clauses.

An excess, or excess-escape, clause, as the clause in issue, provides where the insured is injured while occupying a vehicle not owned by him, the insurance shall apply only as excess insurance over other similar insurance available to the insured, and then only by the amount by which the limits of liability of the policy exceeds the sum of the limits of liability of all other such insurance.

As recognized by the Illinois Supreme Court in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 77, 269 N.E.2d 97, 100:

> "[Excess-escape clauses are] normally found in uninsured motorist policies as a limitation on the coverage provided when the insured is injured in a car not owned by a named insured under the policy. The clause provides that under such circumstances, if other insurance is available, the policy will apply only as excess coverage. * * * This escape feature substantially reduces the coverage which would be provided by an excess policy not so limited. * * * [A]lthough the clause provides for excess coverage, its practical effect is usually controlled by the escape provision— since most uninsured motorist coverage is in the same minimum amount, there is rarely an instance where an 'excess' policy limit exceeds the limit of the other policy; hence it is an infrequent situation for an 'excess' policy to provide any coverage when its 'excess-escape clause' has been given effect. [Citations.]"

Litigated cases indicate insurance companies repeatedly seek to avoid liability through technical or literal construction of the uninsured motorist

endorsement. Courts, in general, have responded to the problems of construction by a close study of the language of the clause at issue, along with the particular facts of the case. In instances where ambiguity is discovered the courts have usually invoked the rule of construction that any ambiguity in the policy should be construed against the insurance company (see *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247), thereby extending coverage to the claimant. See also *Sheffer v. Suburban Casualty Co.* (1958), 18 Ill. App. 2d 43, 151 N.E.2d 429; *Lenkutis v. New York Life Insurance Co.* (1939), 301 Ill. App. 358, *aff'd*, 374 Ill. 136, 28 N.E.2d 86.

Economy maintains *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1, stands for the proposition that an insurance policy which carries an "other insurance-excess escape" clause does not violate public policy. In *Morelock* a father and daughter were separately named insureds under two separate policies issued by one insurance company, although it appears the daughter was emancipated from the family. While in the father's auto, both father and daughter were injured by an uninsured motorist. The court held the "other insurance-excess escape" clause was unambiguous and precluded recovery under the daughter's policy.

In *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, one person purchased three separate auto insurance policies for each of his three autos, and had paid separate premiums under each policy for Family Protection Coverage with liability limits under each policy of $10,000 per person and $20,000 per accident. Each policy contained an "other insurance" provision which included an "excess-escape" clause. Plaintiff's wife was struck and killed by an uninsured motorist. The court allowed stacking of the three policies for a total coverage of $30,000. The court reasoned:

> "When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the 'other insurance' clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not. * * * The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured. [Citations.]

> It is true that an insured might end up in a case such as this in a better situation than if the wrongdoer had been insured to the minimum requirements of the Financial Responsibility Law. That, however, is not material as long as he pays for the coverage. The insured is better off because he paid additional premiums. If there

is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." *Glidden*, 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250-51.

■■ An insurance policy is not to be interpreted in a vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the instant contract might not be such in the particular factual setting in which the contract was issued.

In an attempt to understand the uninsured motorist coverage terms of the instant contract, a purchaser would generally begin by reading the first sentence of the Family Protection Coverage section of the policy, which provides family coverage for injuries caused by an uninsured motorist and states, the insurer agrees:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * *."

The purchaser would later arrive at a provision entitled "Other Insurance" which provides:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

As we have noted earlier, the likelihood of an injury caused by an uninsured motorist being covered by more than one uninsured motorist endorsement has become great. In addition, the number of different factual ways in which this could occur is astronomical. A cursory reading of the "other insurance" provision may lead the purchaser to believe it is an attempt to require an injured person to seek damages from the "primary insurance" applicable to the auto which is "not owned by the named insured," as well as limiting its liability to that in excess of the other policy.

When a family purchases two distinct policies from a single insurer, with each policy containing uninsured motorist coverage, and pays a separate premium of $4 for each uninsured motorist coverage, do they reasonably anticipate their own policies would be regarded as "other

insurance"? We think not. When the same company issued the policies and the policies are issued to members of the same family, living in the same household, who have paid separate premiums, an ambiguity arises as to the "other insurance" clause, which should be resolved in favor of the insureds.

Economy raises the alternative issue of whether a "specific exclusion clause in the policy issued to Justin and Geraldine nullifying applicability of liability for bodily injury to an insured while occupying an auto other than an "insured automobile" is a valid restriction.

In *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, 290 N.E.2d 284, the court considered a "specific exclusion" clause similar to the one at issue. The court held such a clause violated the public policy of our state as expressed through section 143a of the Insurance Code (Ill. Rev. Stat. 1967, ch. 73, pars. 755(a) and 1054), and consequently would not be given effect. These sections of the Insurance Code require any policy of auto insurance must contain coverage for the protection of persons injured by uninsured motorists.

Economy maintains *Doxtater* is distinguishable since in *Doxtater* there was no other insurance available to the plaintiff, whereas the Kaufmanns are covered by at least one policy. The court in *Doxtater*, however, concluded:

> "* * *[O]ur Supreme Court would interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for 'insureds,' regardless of whether, at the time of the injury, the insureds occupied or operated vehicles declared in the subject policy." *Doxtater*, 8 Ill. App. 3d 547, 552, 290 N.E.2d 284, 288.

■■ Economy claims the "specific exclusion" clause in Justin and Geraldine's policy should be given effect because they would be covered by Daniel's policy, at least to the extent the law requires. We see no logic behind this rationale. Since the "specific exclusion" clause is not contingent upon other insurance being available, such a fact need not be considered in determining whether such clause is violative of public policy.

We hold the "specific exclusion" clause in Justin and Geraldine's policy runs contrary to the public policy of Illinois and will not be recognized as enforceable.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

JOHNSON, J., concurs.

Mr. JUSTICE LINN, dissenting:

I respectfully dissent from the majority's finding regarding the "other insurance" clause and would therefore reverse the trial court.

The majority has determined that our supreme court's holding in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 313 N.E.2d 247, compels a finding that the "other insurance" clause is ambiguous and thus ineffective to prevent stacking of the two policies issued to the various members of the Kaufmann family. However, *Glidden* is distinguishable from the case at bar. Moreover, an examination of our supreme court's decision in *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1, reveals an identical factual situation to that in the present case, and accordingly dictates an opposite finding to the one reached by the majority here.

The majority has correctly stated that the courts have closely scrutinized insurance clauses under various factual settings, and when an ambiguity arises, courts resolve that ambiguity in favor of the insured. However, the majority has seemingly ignored the fact that excess-escape clauses, such as the one in issue are generally deemed enforceable, and consistently have been held not to offend our public policy despite their frustrating effect. (*Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97; *Winkler v. State Farm Mutual Automobile Insurance Co.* (1976), 35 Ill. App. 3d 493, 341 N.E.2d 379.) It is true that this view has put Illinois in line with a minority of jurisdictions.

An attempt has been made by our courts to ameliorate the harsh effect of the "other insurance" clause in certain situations. In *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 313 N.E.2d 247, plaintiff had purchased three separate automobile insurance policies for each of his three cars, and had paid separate premiums under each policy for Family Protection Coverage. The Family Protection liability limits were identical in all three policies: $10,000 per person, $20,000 per accident. Each policy also contained an "other insurance" provision which included an "excess-escape" and a "pro-rata"[1] clause. Plaintiff's wife, while a pedestrian, was struck and killed by an uninsured motorist. The insurance company sought to apply the pro-rata[2] clause which would

---

[1] As explained by the court in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 76, 269 N.E.2d 97, 99:

"The typical *pro-rata* clause provides that when an insured has other insurance available, the company will be liable only for the proportion of the loss represented by the ratio between its policy limit and the total limits of all available insurance."

[2] The pro-rata, rather than the excess-escape clause was applicable, since plaintiff's wife was injured while a pedestrian. The excess-escape clause only applied "[w]ith respect to Bodily Injury to an insured while *occupying an automobile* ° ° °." *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 333, 312 N.E.2d 247, 249. (Emphasis supplied.)

have operated to limit the plaintiff's recovery to one-third under each policy or a total of $10,000 under the three policies. The court rejected defendant's contention and allowed "stacking" of the three policies for a total coverage of up to $30,000. Under the facts presented in *Glidden* the court determined that the "other insurance" clause was ambiguous. In applying the standard rule of construction, the court resolved the ambiguity in favor of the insured and against the insurance company.

However, the situation in *Glidden* is readily distinguishable from that in the instant case. Here, as in *Glidden,* one company issued all the policies. However, unlike *Glidden,* in the present case, the policies were purchased by different individuals rather than by the same person. The rationale in *Glidden* is that one person would not have incurred the additional expense in purchasing separate policies had he contemplated that in so doing, he would have limited his recovery under each. Presumably, if that was the expected result, he would have purchased only one policy. This presumption is supported by the language of *Squire v. Economy Fire & Casualty Co.* (1976), 43 Ill. App. 3d 113, 116, 356 N.E.2d 1121, 1124:

> " * * * in the case of a single policy covering more than one car, absent an identical premium charge for all the covered cars, we doubt that the parties would ordinarily contemplate the stacking of coverages for pedestrian accidents, but we think their reasonable expectations would be that the same limits of liability would apply in the event of any accident, whether the person covered were [*sic*] in an insured car or an uninsured car or were [*sic*] a pedestrian, and whether the injury were [*sic*] caused by an insured motorist or by an uninsured motorist."

While plaintiffs argue that our court's recent pronouncement in *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 362 N.E.2d 1355, further demands that we allow "stacking" in the present case, we note that *Bertini,* like *Glidden,* involved a single insured who had purchased three separate policies from one insurance company. The majority has concluded that plaintiffs contemplated multiple coverage in purchasing the two policies as a single family of insureds. I do not believe *Glidden* or *Bertini* may be extended that far. Plaintiffs are separate insureds, albeit at the time of the collision they were members of the same household.[3]

Rather, I believe that *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1, is dispositive of the instant appeal. In *Morelock,* plaintiff was driving an automobile owned by her father when

---

[3] I am also cognizant that *Glidden* involved the construction of a pro-rata, rather than an excess-escape clause but I do not deem that factor to be a persuasive ground for distinction since the rationale of *Glidden* suggests it would have held the same way under the factual context regardless of the type of clause. See *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 362 N.E.2d 1355.

she was struck by an automobile driven by an uninsured motorist. The plaintiff was the named insured in a policy issued by the defendant, and her father was the named insured in another policy issued by the defendant. Both policies contained identical Family Protection coverage. Plaintiff's policy contained an excess-escape clause, identical in wording to that in the case at bar. While the court in *Morelock* held that the Family Protection coverage under the father's policy covered the accident, it held that the excess-escape provision in plaintiff's policy was unambiguous and precluded any additional recovery.

The majority impliedly distinguishes *Morelock* on the grounds that although there existed a father-daughter relationship between the insureds in that case, it appeared that the daughter was emancipated. Thus, there was no issue of duplicative payments for the additional coverage from the same household as in the present case. However, the record in the instant case is devoid of any evidence indicating whether or not Daniel was emancipated from his parents. We only know that he resided with his parents at the time of the accident, although he was living apart from them when he purchased the policy. Therefore, I dispute the majority's suggestion that *Morelock* is distinguishable on this ground.

Since *Morelock* and *Glidden* are both viable pronouncements of our Supreme Court (see *Winkler v. State Farm Mutual Automobile Insurance Co.* (1976), 35 Ill. App. 3d 493, 341 N.E.2d 379), it is incumbent upon us to apply the one that most closely parallels the factual situation before us. The majority has selected *Glidden,* when as far as the record before us discloses, *Morelock* is factually identical and therefore should be followed.

Where the language of a contract is clear and unambiguous, the court must construe it as written. An insurance policy is no different in this regard than any other contract. (*Winkler v. State Farm Mutual Automobile Insurance Co.* (1976), 35 Ill. App. 3d 493, 341 N.E.2d 379.) Despite the harsh effect that "other insurance" clauses have under certain factual settings, neither our courts nor our legislature, has determined that "other insurance" clauses may be ignored when their meaning is clear. While I agree with the majority that the "specific exclusion" present in Justin and Geraldine Kaufmann's policy is inoperative to bar stacking, it is because the courts have determined that such a provision violates the public policy expressed by our Insurance Code. (Ill. Rev. Stat. 1973, pars. 755(a), 1054; *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, 290 N.E.2d 284.) This is not the case with "other insurance" clauses.

Since I believe that *Morelock* rather than *Glidden* is controlling, it follows that the two policies in this case should not be stacked. The plaintiffs should be limited in their recovery up to the scheduled limits of

$10,000 per person and $20,000 per accident under the terms of Daniel's policy. I would reverse the trial court.