2002 OK 95

**Winfred Nimrod GRAHAM, Plaintiff/Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, Defendant/Appellee.**

No. 95,318.

Supreme Court of Oklahoma.

Dec. 17, 2002.

Rex K. Travis, Patricia Travis and C. Ronald Britton, Oklahoma City, OK, for appellant Winfred Nimrod Graham.

Mark. E. Bialick, Rodney D. Stewart, Durbin, Larimore & Bialick, Oklahoma City, OK, for appellee Travelers Insurance Company.

Chris Harper, Phillip P. Owens II, Chris Harper, Inc., Oklahoma City, OK, for amicus curiae GuideOne Mutual Insurance Company.

Chris L. Rhodes, William D. Perrine, Kerry R. Lewis, Tulsa, OK, for amicus curiae Carroll Fisher, Insurance Commissioner of the State of Oklahoma.

WINCHESTER, J.

¶ 1 The issue before us is whether in a commercial insurance policy, uninsured/underinsured (UM/UIM) coverage that is pro-

vided for vehicles owned by the named insured, must also be provided to employees using their own vehicles, which are limited by an endorsement to liability coverage.

## FACTS AND PROCEDURAL HISTORY

¶2 Winfred Nimrod Graham, the plaintiff/appellant, was stopped at a red traffic light in Oklahoma City, Oklahoma, when his car was struck from behind by a second car. Graham's vehicle was struck again when a third car collided with the second car. The record reveals that as a result of this accident, Graham sustained significant injuries, including a fractured neck.

¶3 According to the record, at the time of the accident, Graham was driving his personal vehicle while on business for his employer, CKE Restaurants. CKE had an automobile insurance policy that included UM/UIM coverage with Travelers Indemnity Company of Illinois, the defendant/appellee. Graham sought UIM benefits, but Travelers denied his claim.

¶4 Graham sued the two drivers, their principals, and the owners of one of the vehicles for personal injury, property damage and lost wages. He also sought punitive damages. In his Second Amended Petition, Graham added "Travelers Insurance Company"[1] as a defendant, praying for compensatory and punitive damages.

¶5 Travelers moved for summary judgment on the basis that no UM/UIM motorist coverage exists under the Travelers' policy for CKE employees operating a vehicle CKE does not own. In his response, Graham moved for an interlocutory order[2] arguing he was entitled to UM/UIM motorist coverage under the policy Travelers issued to CKE because that policy provides liability coverage for employees while using their own automobiles, and those covered for liability must also be covered for UM/UIM under Oklahoma's UM statute, 36 O.S.2001, § 3636.[3] The trial court granted Travelers' motion.

¶6 In its September 26, 2000, Journal Entry of Judgment, the trial court found there was no UM/UIM coverage for Graham under the insurance policy issued by Travelers to CKE. The court determined Graham was an occupant of a non-owned automobile, that he was not an insured of Travelers and that Travelers was entitled to judgment on Graham's claim of bad faith. Graham appealed.

---

1. In its motion for summary judgment, the defendant/appellee stated that its corporate name is Travelers Indemnity Company of Illinois, rather than Travelers Insurance Company, the name in the style of this case.

2. Rules for District Courts of Oklahoma, 12 O.S. 2001, ch. 2, app., Rule 13(e) provides:

"e. If it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party.
"If the court finds that there is no substantial controversy as to certain facts or issues, the court may enter an order specifying the facts or issues which are not in controversy and direct that the action proceed for a determination of the remaining fact or issues. An order denying either summary judgment or summary disposition is interlocutory and is not reviewable on appeal prior to final judgment."

3. Although the accident occurred in 1997, the pertinent sections of 36 O.S.2001, § 3636, have remained unchanged since the 1994 amendments, 1994 Okla.Sess.Laws, ch. 294, § 5. The statute states in pertinent part:

" § 3636. **Uninsured motorist** coverage
"A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
"B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury...."
* * *
"F. A named insured or applicant shall have the right to reject **uninsured motorist** coverage in writing, and except that unless a named insured or applicant requests such coverage in writing, such coverage need not be provided in or supplemental to any renewal, reinstatement, substitute, amended or replacement policy where a named insured or applicant had rejected the coverage in connection with a policy previously issued to him by the same insurer."

¶ 7 The Court of Civil Appeals, Division II, reversed the judgment of the trial court and remanded the cause to the trial court for further proceedings, holding 36 O.S.2001, § 3636 requires insurance carriers to provide UM/UIM motorist coverage to the same class of persons covered under the liability provision of an insurance policy, unless such coverage is rejected in writing. The court also held that the $10,000.00 statutory minimum did not apply, and Travelers' refusal to compensate Graham did not constitute bad faith because the issue is one of first impression. We granted certiorari.

## STANDARD OF REVIEW

¶ 8 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie,* 1994 OK 3, ¶ 3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris,* 1980 OK 52, ¶ 9, 610 P.2d 782, 785. Our ruling must be made on the record that the parties actually presented and not on a record that is potentially possible. *Weeks v. Wedgewood Village, Inc.,* 1976 OK 72, ¶ 12, 554 P.2d 780, 784. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is de novo. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, n. 1, 935 P.2d 319, 321, n. 1; *Manley v. Brown,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d at 456, n. 30.

## INSURANCE POLICY PROVISIONS

¶ 9 CKE's insurance policy includes UM/UIM coverage limited in amount to $1,000,000.00 for each accident. The declarations page designates the number 2 as the covered auto symbol. The Business Auto Coverage Form explains the covered auto designation symbols. Symbol "2 = OWNED 'AUTOS' ONLY. Only those 'autos' you own.... This includes 'autos' you acquire ownership of after the policy begins."

¶ 10 The policy included in the record has separate explanations for "WHO IS AN INSURED" for the liability coverage, and for the UM coverage. The UM coverage is in the form of an endorsement, which states in bold letters at the top "THIS ENDORSEMENT CHANGES THE POLICY. READ IT CAREFULLY." In a larger font, the next line reads "OKLAHOMA UNINSURED MOTORISTS COVERAGE." Under section B, "WHO IS AN INSURED," the policy provides:

1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

¶ 11 Graham admits in his response to Traveler's motion for summary judgment that the policy provisions limit UM/UIM coverage to owned autos, but argues those facts are "narrowly technically correct." He claims that the policy contains endorsements that expand the basic coverage. Under an endorsement entitled "Employees as Insureds" the policy provides, "The following is added to the 'LIABILITY COVERAGE WHO IS AN INSURED' provision." On the next line it adds, "Any employee of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." The Business Auto Coverage Part Declarations page shows a covered auto symbol of "1" for liability coverage. The limit of insurance is $1,000,000.00. Symbol "1" on the Business Auto Coverage Form indicates that "1 = ANY 'AUTO.' " Graham emphasizes that the endorsements, "Hired or Borrowed Covered Auto Coverage," "Nonowned Liability coverage," and liability coverage for employees all

work together to modify the "WHO IS AN INSURED" section of the UM/UIM endorsement. Subsection 3 provides, "Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'. . . ."

¶ 12 Graham argues that these endorsements modify the basic coverage in the following manner. Graham was using his own vehicle to perform duties for his employer. That vehicle became either a borrowed or a non-owned vehicle as to the named insured, CKE. Because Graham was occupying that vehicle, he became an insured as a person 'occupying' a covered 'auto.' Graham concludes that being insured for liability also insures him for UM/UIM.

¶ 13 But even after Graham's argument on this point, we are still left with this undisputed fact: The endorsements clearly show that CKE and Travelers agreed that the parties intended UM/UIM coverage for vehicles owned by CKE. Graham's vehicle was not owned by CKE. Therefore, he was not covered for UM/UIM. Graham then attempts to make an argument that the policy is ambiguous, but the facts stated above show that this argument must fail. Graham's vehicle clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM.

## REQUIREMENTS OF § 3636

¶ 14 Graham argues that 36 O.S.2001, § 3636 requires that UM/UIM must be provided in every motor vehicle liability policy unless rejected in writing. He reasons that once an individual is defined as an insured under the contract, as Graham is here by reason of the endorsement to the liability portion of the contract, he is an insured under the UM/UIM portion of the contract. He continues that having chosen to insure Graham and other employees under the liability coverage, § 3636 requires UM/UIM coverage for them. He asserts that this insurance contract is made up of liability and UM/UIM coverages, and that these coverages are not separate contracts.

¶ 15 The only question to be decided is whether 36 O.S.2001, § 3636 requires UM/UIM coverage over every vehicle this commercial auto policy covers for liability. This is a public policy decision based on statute, not strictly on contract. However, *Shepard v. Farmers Ins.*, 1983 OK 103, 678 P.2d 250, reveals that contractual agreements have an impact on the terms of an insurance policy even though insurance policies are issued pursuant to statute.

¶ 16 *Shepard* involved a certified question from the United States District Court for the Western District of Oklahoma. That question asked whether a clause was unconscionable or against public policy as expressed in Oklahoma's Uninsured Motorist Act. The clause denied coverage for a relative of the insured living in the same household because that relative or the relative's spouse, owned an automobile. The Court held that the exclusionary language was "consistent with sound principles of contract law and . . . neither unconscionable nor violative of the public policy expressed in Oklahoma's Uninsured Motorist Act." *Shepard*, 1983 OK 103, ¶ 1, 678 P.2d at 251.

¶ 17 *Shepard* observed that insurance policies are issued pursuant to statutes, and the provisions of those statutes are treated as though they were written into the policy. The parties are nevertheless free to agree upon the terms of the contract and may limit or restrict an insurer's liability. Although the court will interpret the policy consistent with the statute, it will not rewrite the contract. *Shepard*, 1983 OK 103, ¶ 2, 678 P.2d at 251.

¶ 18 CKE and Travelers are the parties to this contract. CKE paid the premiums and agreed to the terms. CKE's liability policy for nonowned vehicles benefits the company since it insures CKE for the negligent acts of its employees who are in the course of their employment. It has an indirect benefit to the employee, who must by law insure his own vehicle for liability. *Beavin v. State ex rel. Dept. of Public Safety*, 1983 OK 34, ¶ 17, 662 P.2d 299, 302. Where employees do not contribute to group insurance policies, such policies are mere gratuities to those employees. *Christian v. Metropolitan Life Ins. Co.*, 1977 OK 132, ¶ 17, 566 P.2d at 448.

¶ 19 As stated above, Graham agrees that the policy in question is one policy insuring multiple vehicles. Section 3636 does not require that every vehicle covered in one policy have a separate document that separately accepts or rejects UM/UIM coverage for that vehicle. CKE accepted UM/UIM coverage and limited it to company-owned vehicles. The parties to the contract agreed to those provisions, those provisions are not ambiguous, and there is no public policy in § 3636 that is violated by the agreement of the parties.

¶ 20 The law required that Graham insure his vehicle for liability, and § 3636 provided him the opportunity to accept or reject UM/UIM coverage for his personal protection. *Moser v. Liberty Mut. Ins. Co.*, 1986 OK 78, 731 P.2d 406, like *Shepard*, involved a federal certified question. The question in *Moser* asked whether § 3636 applied to an umbrella liability policy designed to provide excess liability coverage to the insured, a large multi-state corporation. The Court held that it did not. The company had an inflexible policy against maintaining UM/UIM coverage on company vehicles. The company did not reject UM/UIM coverage in writing for the excess liability policy. In its discussion of the case, this Court stated: "[T]he intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance." *Moser*, 1986 OK 78, ¶ 4, 731 at 408. CKE has no obligation to agree to provide Graham with UM/UIM coverage for Graham's personal vehicle. *Moser* stated that the intent of the legislature must prevail over the literal import of the words used. *Moser*, 1986 OK 78, ¶ 6, 731 at 409. The phrase "persons insured thereunder" in § 3636(B), despite their literal import, does not overcome CKE's specific limitation of UM/UIM coverage to owned vehicles.

¶ 21 The *Shepard* case allows parties to agree to exclude a relative living in the same house from liability coverage. CKE and Travelers are free to exclude employees operating their own vehicles from UM/UIM coverage through the method of limiting UM/UIM coverage to vehicles owned by the company. No public policy is violated by such a limitation.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.**

¶ 22 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, OPALA, and SUMMERS, JJ., concur.

¶ 23 KAUGER and BOUDREAU, JJ., dissent.

OPALA, J., with whom Hodges, J., joins, concurring.

¶ 1 I am unable to read into the provisions of 36 O.S.2001 § 3636 [1] a **statutory portability mandate** for extending a fleet policy's UM coverage to include *persons injured in a privately-owned vehicle driven on the insured employer's business.* Neither can I accede to today's dissent which counsels the court to **invalidate** the insurance policy's restrictive language **excluding** from UM coverage persons in vehicles operated on the insured's business but not owned by the insured. An insurance policy that restricts UM coverage to vehicles owned by the insured—i.e., to those which are covered for liability and for UM protection—does not offend the terms of § 3636.

¶ 2 More simply stated, I can find no **textually demonstrable** warrant in the language of § 3636 for creating, by our pronouncement in this case, a compulsory UM coverage for on-the-job vehicular injuries inflicted (by under- or uninsured tortfeasors) upon persons in automobiles not owned by the insured employer. A contrary resolution of this legal question would, by judicial fiat, establish a mandatory insurance regime **clearly duplicative** of (or parallel with) the employer's statutory workers' compensation liability. In short, one who as owner insures a fleet of vehicles for liability and UM protection but its non-owned automobiles solely for

---

1. As it is stated in today's opinion, the version of § 3636 found in the 2001 decennial compilation has remained unchanged since 1994. *It was in force when the accident in suit occurred in 1997.*

*respondeat superior* liability, will not be deemed, by its failure to reject in writing UM coverage for non-owned vehicles, to have purchased UM protection for the latter automobiles.

¶ 3 I hence concur in the court's opinion and join the separate writing by HODGES, J.

HODGES, J., concurring, with whom Opala, J. joins.

¶ 1 This case involves uninsured motorist/under insured motorist (UM/UIM) coverage. While on the job, Winfred Nimrod Graham, an employee of CKE Restaurants (CKE), was injured. At the time, Graham was driving his own car. CKE's liability insurance policy covered employees while they were driving their own cars, but excluded the same employees under its UM/UIM provisions. Graham sued the insurance carrier under the UM/UIM provisions.

¶ 2 The issue of first impression is whether section 3636 requires that UM/UIM coverage be provided to all persons covered for liability. Section 3636 requires that an insurer offer UM/UIM coverage in the same amount as liability. It also provides that the name insured has the right to reject UM/UIM coverage in writing. Further, in *Shepard v. Farmers Ins.*, 1983 OK 103, ¶ 2, 678 P.2d 250, 251, this Court held that parties can limit or restrict the insurer's liability so long as the restriction or limitation does not violate public policy. In the present case, the exclusionary language "does not violate the express statutory provisions of [section 3636], rather it exists as an unambiguous contract provision. To interpret the contract or the statute differently would be to rewrite one or both...." *See id.*

¶ 3 Nothing in title 36, section 3636 invalidates the contractual limitation in the current policy. Because the parties intended to limit the insurer's exposure and the limitation does not violated section 3636's statement of public policy, I concur in the Court's opinion.

BOUDREAU, Justice, dissenting:

¶ 1 The automobile policy in dispute is comprised of, among other things, liability and UM coverages. Winfred Nimrod Graham (Graham) is covered under the liability portion of the policy by an endorsement that expands the policy definition of who is an insured to include employees conducting company business in their own car. Graham is not covered under the express terms of the UM provisions because they do not provide UM coverage to employees injured while driving a car not owned by the employer. (Here, Graham was conducting company business while driving his own car at the time of the accident.) The first impression question to be decided is whether the Oklahoma Uninsured Motorist Statute, 36 O.S. 2001 § 3636, requires that UM coverage be provided to the same class of persons who are covered for liability under the automobile policy.

¶ 2 The Oklahoma Uninsured Motorist Act (UM statute) provides in pertinent part:

A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

36 O.S. § 3636 (emphasis added). Under Oklahoma law, insurance policies are issued pursuant to statute and the statutory provisions are given force and effect as if written into the policies. *Shepard v. Farmers Ins. Co.*, 1983 OK 103 ¶ 2, 678 P.2d 250, 251. Thus, we must interpret the insurance policy at issue in this case in light of § 3636.

**232**

¶ 3 The resolution of this case depends upon our interpretation of the statutory phrase "for the protection of persons insured thereunder." [1] Generally, statutes must be interpreted in accordance with their plain, ordinary meaning according to the import of the language used. *In re Certification of Question of State Law*, 1977 OK 16, 560 P.2d 195. Nevertheless, courts may adopt a restricted meaning of statutory words where using the literal meaning of the words would lead to an absurd result or thwart the obvious legislative purpose of the statute. *State ex rel. DHS v. Weinberger*, 741 F.2d 290 (10th Cir.1983), *cert. denied, Farrah v. U.S.*, 466 U.S. 971, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984).

¶ 4 By its express terms, § 3636 requires that insurance companies issuing policies in Oklahoma must "provide coverage therein or supplemental thereto for the protection of *persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...". (emphasis added). Applying the plain, ordinary meaning of the words used in this statutory phrase, the phrase requires UM coverage to be coextensive with the coverage afforded under the comprehensive liability portion of any given policy. The majority opinion, however, refuses to give the phrase a literal construction even though it makes no finding that using the literal meaning of the words would lead to an absurd result or thwart the obvious legislative purpose of the UM statute.

¶ 5 The purpose behind the UM statute is to place the insured in the same position as if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility. *McSorley v. Hertz Corp.*, 1994 OK 120, 885 P.2d 1343. The UM statute is clearly designed to make UM coverage widely available in automobile policies throughout Oklahoma. Ascribing a literal meaning to the words "persons insured thereunder" requires insurers to extend UM coverage to the same class of persons who are covered for liability under the policy. This interpretation does not lead to an absurd result. Moreover, it not only does not thwart the obvious legislative purpose of the statute, it promotes it.

¶ 6 Our previous uninsured motorist cases did not signal the decision reached today by the majority. In *Cothren v. Emcasco Ins. Co.*, 1976 OK 137, 555 P.2d 1037, we held that attempts to tie UM coverage to the vehicle rather than to the person are unenforceable. In *Cothren*, the appellant was injured while riding as a passenger on a motorcycle which was struck by an uninsured vehicle. He sought to enforce the UM provisions of his father's liability policy, but the trial court granted summary judgment in favor of the insurer on the ground that the motorcycle was not listed as an insured vehicle under the father's policy. Although the motorcycle was not listed as an insured vehicle, the UM provision defined an insured as "the named insured and any designated insured and, where residents of the same household, the relatives of either." *Id.* at ¶ 5, 555 P.2d at 1038. Thus, as a relative of the named insured, the appellant was an insured under the UM provision of his father's policy. We held that the exclusionary language of the policy (which denied the appellant coverage based on the fact that the motorcycle was not a covered auto) was contrary to public policy and therefore void. *Id.* at 16, 555 P.2d at 1040. In other words, we held in *Cothren* that once a person is an insured under the UM provisions of an insurance policy, exclusions which attempt to tie coverage to the vehicle rather than to the person are contrary to § 3636 and are unenforceable.

¶ 7 The majority opinion relies on *Shepard v. Farmers*, 1983 OK 103, 678 P.2d 250, for the principle that parties to an insurance contract are free to agree upon the terms of the contract in a manner which limits or restricts the insurer's liability as long as the terms are neither unconscionable nor viola-

---

**1.** Before today, we have interpreted § 3636 to require only that UM coverage be included in any insurance policy providing for liability cover-age, unless UM coverage is rejected in writing. *See, e.g., Chambers v. Walker*, 1982 OK 128, 653 P.2d 931.

tive of the public policy expressed in the UM statute. While *Shepard* does stand for the proposition that parties to an insurance contract can agree to define who is an insured for purposes of automobile liability and UM coverage, it sheds very little light on the issue of whether our statute requires UM coverage to be coextensive with the coverage afforded under the liability portion of the policy. This is because unlike Graham, the plaintiff in *Shepard* was not covered as an insured under the liability provision of the insurance policy.

¶ 8 In *Shepard* we upheld the policy definition of an insured which excluded from coverage a relative of the insured living in the same household if the relative owned his/her own vehicle. In other words, Shepard was excluded as an insured by definition. Nevertheless, the *Shepard* opinion does include the following language:

> Although upholding the exclusionary language might appear to create a situation in which a relative vehicle owner would receive less protection than a relative non-owner merely based upon vehicle ownership, *coverage in each case stems not from owning an automobile, but from falling within the definition of an "insured" under any given contract.*

*Shepard, Id.* at 7, 678 P.2d at 252 (emphasis added).

¶ 9 The majority opinion also relies on *Moser v. Liberty Mutual Ins. Co.,* 1986 OK 78, 731 P.2d 406, in which a federal court requested that we determine the applicability of § 3636 to a policy of excess (umbrella) coverage. In *Moser,* the excess policy involved was separate from the primary policy and, like other excess policies, was designed to cover situations in which corporate liability exceeded the limits of the primary policy. We held that policies providing excess (umbrella) coverage are not required to include UM coverage. *Id.* at 8, 731 P.2d at 409. *Moser* is inapposite. The policy in contro-

versy is primary; it is not an excess (umbrella) policy either by its terms or by its "other insurance" clause (which makes it excess under some circumstances).

¶ 10 UM coverage should extend to the same class of persons who are covered under the comprehensive liability portion of any given policy.[2] This is in accord with the manner in which the vast majority of other jurisdictions have construed their respective uninsured motorist statutes. *See State Farm Auto. Ins. Co. v. Reaves,* 292 Ala. 218, 292 So.2d 95 (1974), *overruled on other grounds by State Farm Mut. Auto. Ins. Co. v. Wallace,* 743 So.2d 448 (Ala.1999); *First Sec. Bank v. Does,* 297 Ark. 254, 760 S.W.2d 863 (1988); *McMichael v. Aetna Ins. Co.,* 878 P.2d 61 (Colo.App.1994); *Hornick v. Owners Ins. Co.,* 511 N.W.2d 370 (Iowa 1993); *Kats v. American Family Mut. Ins. Co.,* 490 N.W.2d 60 (Iowa 1992); *Bertini v. State Farm Mut. Auto. Ins.,* 48 Ill.App.3d 851, 6 Ill.Dec. 435, 362 N.E.2d 1355 (1977); *Vernon Fire & Cas. Ins. Co. v. American Underwriters, Inc.,* 171 Ind.App. 309, 356 N.E.2d 693 (1976); *Babin v. State Farm Mut. Auto. Ins. Co.,* 504 So.2d 558 (La.App.1987); *Thomas v. Allstate Ins. Co.,* 321 So.2d 808 (La.App. 1975); *Pappas v. Central Nat'l Ins. Group of Omaha,* 400 Mich. 475, 255 N.W.2d 629 (1977); *Roach v. Central Nat'l Ins. Co.,* 60 Mich.App. 40, 230 N.W.2d 297 (1975); *Georgeson v. Fidelity & Guaranty Ins. Co.,* 48 F.Supp.2d 1262 (D.Mont.1998); *Allied Mut. Ins. Co. v. Action Electric Co., Inc.,* 256 Neb. 691, 593 N.W.2d 275 (1999); *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978). These courts concluded this is the most sensible reading of the phrase "persons insured thereunder" as provided in their uninsured motorist statutes. As one court explained: "If insurers are allowed to designate a separate and smaller category of persons insured under uninsured motorist coverage, then the broad-based protection which the legislature intended to require could be contractually restricted at the whim

---

**2.** Further, Graham's entitlement to UM coverage is limited by Oklahoma law to the statutorily mandated minimum coverage. *See O'Neill v.*

*Long,* 2002 OK 63, 54 P.3d 109; *Moon v. Guarantee Ins. Co.,* 1988 OK 85, 764 P.2d 1331.

of insurers." *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920, 924–25 (Minn.1978).