2009 OK 38

Amanda L. BALL, Plaintiff–Appellant

v.

WILSHIRE INSURANCE COMPANY, a North Carolina Insurance Company, Defendant–Appellee.

No. 104,939.

Supreme Court of Oklahoma.

June 16, 2009.

Rehearing Denied Sept. 14, 2009.

Rick W. Bisher, Ryan Bisher Ryan, Oklahoma City, OK, for Plaintiff–Appellant.

Scott M. Rhodes, James W. Dobbs, Smith Rhodes Stewart & Elder, P.L.L.C., Oklahoma City, OK, for Defendant–Appellee.[2]

OPALA, J.

¶ 1 The United States Court of Appeals for the Tenth Circuit certified to this court five questions of law under the Revised Uniform Certification of Questions of Law Act.[3] We address the following four consolidated and reformulated [4] questions:

1. Is a motor-vehicle insurance policy provision that excludes any coverage for "Vehicles Loaned, Leased or Rented to others, including those dealerships and repair shops who provide [word or words omitted in policy] while customer's auto is being repaired" void in whole or in part, in light of Oklahoma's Compulsory Liability Insurance statute, 47 O.S. § 7–600 to § 7–612?

2. If the answer to # 1 is yes, does the exclusion nevertheless relieve an insurance company of its contractual duty to defend an insured?

3. If the answer to the second certified question is "no," does an insurance company act in bad faith in relying on the exclusion to deny a defense to an insured?

4. Does an insurer who relies on the exclusion to deny or delay payment of uninsured motorist benefits act in bad faith?

2. Identified herein are those counsel for the parties whose names appear on the briefs filed in this court.

3. The provisions of 20 O.S.2001 § 1602 set forth this court's power to answer certified questions. That provision states:

"Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."

4. The provisions of 20 O.S.2001 § 1602.1, which give this court the power to reformulate certified questions, state:

"Power to Reformulate Question. The Supreme Court of this state may reformulate a question of law certified to it."

We amend the first certified question by substituting the word "any" for the word "liability" in the first line to reflect the actual wording of the exclusion. We also consolidate and reformulate the fourth and fifth certified questions. The sole issue pending in the certifying court with respect to UM benefits is whether Wilshire's delay in paying UM benefits to Ball evinces bad faith. The answer to that question does not require us to decide whether the Loaned Vehicle Exclusion was or was not valid as applied to UM coverage, but rather on whether Wilshire's belief that it was valid to exclude UM coverage was reasonable. The reformulated question addresses this narrower issue.

¶ 2 We answer the first and second questions in the affirmative. Our answer to the second question makes a response to the third question unnecessary. Our answer to the fourth question is in the negative.

## I

## THE ANATOMY OF FEDERAL LITIGATION

¶ 3 Wilshire Insurance Company issued a commercial auto liability insurance policy to John Drummond, d/b/a Henryetta Auto Sales. The policy contained a "Combined Garage Exclusion Endorsement," which *inter alia* excluded *any* coverage for vehicles loaned to customers of an auto repair shop while the customer's car was being repaired ("Loaned Vehicle Exclusion").[5] But for the Loaned Vehicle Exclusion, a customer of Henryetta who had no liability insurance of his or her own and who was driving a Henryetta-owned vehicle with Drummond's permission would have fallen under the definition of "an insured" contained in the liability section of the Wilshire policy.[6] But for the Exclusion, a customer permissively driving a Henryetta-owned vehicle would also have fallen under the definition of "an insured" in the Uninsured Motorist Coverage Endorsement.[7]

¶ 4 On 2 June 2003, Amanda Ball, with her roommate as a passenger, was driving a pick-up truck belonging to Henryetta while her vehicle was being repaired at Drummond's repair shop when she collided with a vehicle that turned left in front of her. In addition to the driver, three children were riding as passengers in the other vehicle. The accident caused serious injuries to the occupants of both vehicles, including the death of one of the children. Both Ball and the other driver were cited for traffic violations.

¶ 5 The guardian ad litem of two of the children and the personal representative of the deceased child each filed separate negligence actions against Ball in state court. Ball asked Wilshire to defend her. She also made a claim under the uninsured/underinsured motorist ("UM") provisions of the Wilshire policy. Relying on the Loaned Vehicle Exclusion, Wilshire refused to defend Ball or to pay UM benefits to her or to her passenger. The state court consolidated the tort actions and entered a default judgment against Ball in excess of $20,000,000.00.

¶ 6 Ball sued Wilshire in state court, alleging that she was insured under the Wilshire policy and that Wilshire's refusal to defend her in the tort litigation and its denial of her UM claim breached the insurance contract and violated the insurer's implied duty of good faith and fair dealing. After removing the case to federal court, Wilshire answered and filed a counterclaim for a declaratory

---

**5.** The Loaned Vehicle Exclusion provides:

"It is hereby understood and agreed, no coverage is afforded under this policy, for Vehicles Loaned, Leased or Rented to others, including those dealerships and repair shops who provide [*sic*] while customer's auto is being repaired."

One or more words has been omitted in the policy between the words "provide" and "while." The parties and the federal courts have treated the omitted word or words as referring to a loaner vehicle or a substitute vehicle.

**6.** The policy contains separate definitions of "Who Is An Insured" for each coverage. The Liability Coverage section defines an insured in pertinent part as follows:

"The following are 'insureds' for covered 'autos':
(1) You for any covered 'auto'.
(2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except: * * * * *

(d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:
(i) Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged."

The policy's general declarations identify as covered autos for liability coverage purposes: (1) autos owned by the named insured, (2) specifically described autos, and (3) non-owned autos while being used in the garage business.

**7.** The Uninsured Motorist Coverage Endorsement defines an insured as:

"1. You
2. If you are an individual, any 'family member'
3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'...."

The policy's general declarations identify as covered autos for uninsured motorist coverage purposes: (1) autos owned by the named insured and (2) specifically described autos.

judgment that it had no duty to defend Ball. Wilshire also tendered UM limits to Ball and her passenger, but maintains that it was not *legally* obligated to do so.[8] Ball then recast her UM contract and tort claims in terms of delay in payment of benefits due. Upon cross motions for summary judgment, all issues were summarily adjudicated in favor of Wilshire except the UM breach of contract claim, which was left pending.

¶ 7 Meanwhile, Ball's tort litigation judgment creditors brought a proceeding in state court against Wilshire to garnish the liability proceeds of the Wilshire policy. This proceeding was also removed to federal court. Upon cross motions for summary judgment, the district court ruled that the Loaned Vehicle Exclusion was unenforceable against the garnishors to the extent of the minimum amount of liability coverage required by the Oklahoma Compulsory Liability Insurance Law.[9] No appeal was brought from that decision.

¶ 8 Ball filed an appeal in the United States Court of Appeals for the Tenth Circuit from the federal district court's adverse decision in her contract/tort action against Wilshire. On 20 August 2007, the Tenth Circuit certified five questions of state law to this court, deeming them to be unsettled by extant Oklahoma jurisprudence. Because the paperwork submitted to this court by the Tenth Circuit at that time indicated that the federal appellate court might yet refuse to

exercise jurisdiction over the appeal, we issued an opinion on 23 October 2007 in which we declined to answer the certified questions as potentially calling for a prohibited advisory opinion.[10] The jurisdictional issue having since been resolved,[11] the federal appellate court has recertified the legal questions which as consolidated and reformulated we answer today.

## II

## THE NATURE OF THIS COURT'S FUNCTION WHEN ANSWERING QUESTIONS FROM A FEDERAL COURT

¶ 9 In answering questions submitted by a federal court the parameters of state-law claims or defenses identified by the questions may be tested. Yet it is not this court's province to intrude (by its responses) upon the certifying court's decision-making process.[12] The certifying court must be left entirely free to assess the impact of our answers and to make its own appraisal of the proof in the case before it.[13]

¶ 10 Because this case is not before us for decision, we refrain, as we must, from applying the declared state-law responses to the facts in the federal-court litigation. Those facts have been tendered for review by the certifying court either in the form of evidence adduced at trial or in acceptable probative substitutes (so-called "evidentiary materials").[14] The task of analyzing today's

8. In its Answer, Wilshire responded to Ball's allegation that she was an insured under the policy by stating, "admitted for uninsured motorist coverage." Wilshire responded to Ball's allegation that the policy covered her under the uninsured motorist provisions of the policy for losses she sustained in the 2 June 2003 accident by stating, "admitted if, in fact, the value of plaintiff's injuries and damages exceeds the tortfeasor's liability limits." The interpretation of an insurance contract is a matter of law. *Haworth v. Jantzen*, 2006 OK 35 ¶ 13, 172 P.3d 193, 196. Admissions in an answer addressing matters of contract interpretation represent a forensic advocate's legal opinion and are not binding on the court in responding to a certified question of law.

9. The statutory provisions imposing a compulsory liability insurance requirement are codified at 47 O.S.2001 § 7–600 et seq. They are part of the state's Financial Responsibility Act, 47 O.S.2001 § 7–101 *et seq.*

10. *Ball v. Wilshire*, 2007 OK 80, 184 P.3d 463.

11. Ball dismissed her remaining UM breach of contract claim in order to proceed with the federal appeal.

12. *See* Uniform Laws Annotated, Uniform Certification of Questions of Law Act/Rule (1995); Goldschmidt, Certification of Questions of Law; Federalism in Practice, American Judicature Society (1994).

13. *See, e.g., Shebester v. Triple Crown Insurers*, 974 F.2d 135, 139 n. 3 (10th Cir.1992).

14. *Schmidt v. U.S.*, 1996 OK 29, ¶ 7, 912 P.2d 871, 873; *Brown v. Ford*, 1995 OK 101, ¶ 4, 905 P.2d 223, 226.

answers for their application to this case is deferred in its entirety to the certifying court.[15]

## III

## THE LOANED VEHICLE EXCLUSION CONTRAVENES THE PUBLIC POL- ICY BEHIND THE COMPULSORY LIABILITY INSURANCE LAW TO THE EXTENT IT DENIES TO AN INJURED THIRD PARTY THE MIN- IMUM AMOUNT OF LIABILITY IN- SURANCE REQUIRED BY STAT- UTE[16]

¶ 11 The provisions of 47 O.S.2001 § 7–601(C)(1) prohibit the operation of any motor vehicle in this state unless it is insured or secured for the payment of personal injury or property damage to another arising out of the ownership, maintenance, operation or use of the vehicle.[17] As part of this mandate, the law requires that every owner's policy of automobile liability insurance include an "om- nibus clause" that insures against liability not only the named insured, but also any other person using an insured vehicle with the express or implied permission of the named insured.[18] No one may be excluded from liability coverage unless the exclusion is au- thorized by "existing laws." [19]

¶ 12 The principal purpose of compulsory liability insurance is to protect the public from the financial hardship that may result from the use of automobiles by people who are financially unable to respond in damages for any injury done.[20] In enacting legislation compelling the purchase of liability insur- ance, the legislature intended that *every ve- hicle operated in this state be secured* against liability to innocent victims of the negligent operation of insured vehicles.[21] This clearly

15. *Bonner v. Okla. Rock Corp.*, 1993 OK 131, ¶ 2, n. 3, 863 P.2d 1176, 1178 n. 3; *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 8, n. 4, 826 P.2d 603, 606 n. 4.

16. The federal district court provided its own answer to this question in the garnishment pro- ceeding between Ball's judgment creditors and Wilshire, ruling that the Loaned Vehicle Exclu- sion could not be used by Wilshire to deny liabili- ty insurance proceeds to the garnishors to the extent of the minimum required by Oklahoma's Compulsory Liability Insurance Law. That ruling was not appealed. Although Wilshire's obli- gation under the Compulsory Liability Insurance Law to an injured third party judgment creditor is not at issue in the underlying cause, it is inextricably intertwined with and determinative of issues pending in the certifying court. We therefore deem the first certified question appro- priate for resolution in certification process.

17. *See* the provisions of 47 O.S.2001 § 7–601(C)(1), which state in pertinent part:

"On and after September 1, 1993, unless other- wise provided by law, no motor vehicle shall be operated in this state unless there is in effect with respect to such vehicle security for the pay- ment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. Every person, while operating or using a motor vehicle in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by any per- son arising out of the operation or use of the

vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from cover- age."

18. *See* the provisions of 47 O.S.2001 § 7–600, which state:

"As used in Section 7–600 *et seq.* of this title: 1. "Owner's policy". An owner's policy of liability insurance:
\* \* \* \* \*
b. shall insure the person named therein *and insure any other person, except as provided in subparagraph c of this paragraph, using an insured vehicle with the express or implied per- mission of the named insured,* against loss from the liability imposed by law for damages aris- ing out of the ownership, maintenance, opera- tion or use of such vehicle, ..." (emphasis added)

19. *See* the provisions of 47 O.S.2001 § 7–600(1)(c), which authorizes "exclusions from coverage in accordance with existing laws, ..."

20. *Harkrider v. Posey*, 2000 OK 94, ¶ 15, 24 P.3d 821, 829; *Thomas v. National Auto. and Cas. Ins. Co.*, 1994 OK 52, ¶ 10, 875 P.2d 424, 427; *Tapp v. Perciful*, 2005 OK 49, ¶ 21, 120 P.3d 480, 483.

21. *Young v. Mid–Continent Cas. Co.*, 1987 OK 88, ¶ 16, 743 P.2d 1084, 1088; *Thomas, supra* note 20. The one very narrow exception to this rule may be the exclusion of a specifically-named individual because expressly recognized by the Compulsory Liability Insurance Law itself. *Pierce v. Okla. Prop. & Cas. Ins. Co.*, 1995 OK 78, ¶ 15, 901 P.2d 819, 823 (upholding named driver

articulated public policy plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Compulsory Liability Insurance Law.[22] In light of this public policy, clauses which would exclude from coverage all potential claimants have been almost uniformly invalidated because they are at odds with the legislative intent of the Compulsory Liability Insurance Law.[23] Our decisions make clear that an insured vehicle cannot be rendered uninsured *vis a vis* the general public.[24]

■ ¶ 13 The Loaned Vehicle Exclusion is not authorized by the Compulsory Liability Insurance Law and does not differ in any significant respect from other exclusions deemed incompatible with the statute because they would bar from coverage all potential claimants. The Loaned Vehicle Exclusion removes protection from the general public by rendering uninsured an otherwise insured vehicle when a certain class of people, customers of a named-insured dealership or repair shop, happen to be driving that vehicle. Because the Loaned Vehicle Exclusion has the effect of withholding coverage from the general public and is not sanctioned by existing law, we pronounce it violative of the public policy embodied in 47 O.S.2001 § 7–601(C)(1).

¶ 14 The legislatively-declared imperative behind the Compulsory Liability Insurance Law is that *a minimum amount* of liability insurance be available for the protection of the general public.[25] In furtherance of that policy, we declare that the Law bars enforcement of the Loaned Vehicle Exclusion up to the statutorily-mandated minimum amount of liability coverage. Liability coverage in excess of the statutory minimum is controlled by the parties' agreement.

**IV**

**THE COMPULSORY LIABILITY INSURANCE LAW DISPLACES INSURANCE POLICY PROVISIONS ONLY TO THE EXTENT THEY ARE INCOMPATIBLE WITH THE LAW'S INTENT TO PROVIDE MINIMAL COMPENSATION TO AN INJURED THIRD PARTY**

■ ¶ 15 Ball argues that the Compulsory Liability Insurance Law completely nullifies an exclusionary clause that violates its mandate of minimum liability coverage. She argues that if a person would have been a policy-defined insured under the terms of the omnibus clause *but for* the exclusion, he or she becomes such by reason of the exclu-

exclusion based on the poor driving record of the excluded individual). The last sentence of 47 O.S.2001 § 7–601(C)(1) appears to sanction an exclusion for a named individual. The Court of Civil Appeals, Division 2, has recently questioned the continued validity of *Pierce.* See *McElmurry v. Garbow,* 2005 OK CIV APP 38, ¶ 8, 116 P.3d 198, 201 (holding that policy provision naming policy holder as an excluded driver violates public policy and is invalid to the extent that it denies liability coverage to innocent third parties).

**22.** *Harkrider, supra* note 20, at ¶ 15, at 829; *Thomas, supra* note 20, at ¶ 10, at 427; *Tapp, supra* note 20, at ¶ 21, at 483.

**23.** *See Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 1987 OK 121, 747 P.2d 947 (answering certified question of law, court held that it was a violation of public policy for insurer and insured to agree that liability insurance coverage of a commercial vehicle would not apply beyond a 200–mile radius; provision void insofar as it limited the minimum coverage required by the statute); *Young v. Mid–Continent*

*Cas. Co., supra* note 21 (invalidating clause in automobile liability insurance policy that excluded coverage if insured vehicle was operated by any person under the age of twenty-five years); *Nation v. State Farm Ins. Co.,* 1994 OK 54, 880 P.2d 877 (Per Curiam) (invalidating to the extent of the minimum coverage required by statute an exclusion that eliminated liability coverage for injury to members of the family of an insured who reside in the same household as the insured); *Harkrider v. Posey, supra* note 20 (refusing to permit an insurance company to rescind an insurance policy as to an innocent third-party victim based on a misrepresentation in the application); *Hartline v. Hartline,* 2001 OK 15, 39 P.3d 765 (holding that named insured injured while riding as a passenger could not be excluded from liability coverage where the other named insured had rejected uninsured motorist coverage).

**24.** *See Nation, supra* note 23, at ¶ 16, at 886 (Opala, J., with whom Watt, J., joined, concurring in the court's judgment).

**25.** *Young, supra* note 21, at ¶ 16, at 1088.

sion's nullification.[26] The policy must then be treated as if the exclusion never existed and the wrongly excluded person becomes entitled to the performance of the insurer's other contractual obligations to its insured, including a defense. We disagree.

¶ 16 An insurer's duty to defend claims against its insured is an *ex contractu* obligation.[27] The defense duty is measured by the nature and kinds of risks covered by the policy as well as by the reasonable expectations of the insured.[28] Ordinarily the duty to defend accompanies the duty to indemnify, but the parties may provide otherwise.[29]

¶ 17 No public policy requires our interference with an insurance contract hammered out by the parties as long as all applicable legislative mandates are met.[30] It is *"the intent of the compulsory liability insurance law* that, to the minimum amount of liability coverage required by statute, *the innocent plaintiff should be entitled to recover."*[31] Our decisions invalidating exclusionary clauses have been narrowly crafted to achieve this purpose. Where an offending exclusion has diluted the omnibus coverage required by

statute, we have treated the policy as providing the required coverage *for the benefit of the innocent plaintiff.*[32] We have never held, nor do our decisions suggest, that the exclusion is nullified beyond achieving that purpose. Thus, in *O'Neill v. Long,*[33] we held that while the Compulsory Liability Insurance Law requires an insurer to provide liability insurance in the minimum statutory amount, the unauthorized driver of the insured vehicle "was *not an insured under the terms of [the insurer's] policy* for of liability coverage in excess of the statutory minimum compulsory insurance."[34] (emphasis added). We said instead that the Law "requires liability insurance *must continue to cover the insured vehicle* even though the permittee exceeds the scope of the named insured's consent."[35] (emphasis added)

¶ 18 Our Compulsory Liability Insurance Law mandates that *vehicles* be secured against liability to innocent victims where harm occurs from a vehicle's negligent operation. It does not mandate an insurer-provided defense of persons driving vehicles that are secured by operation of the Compulsory Liability Insurance Law.[36] The statuto-

---

**26.** The Wilshire insurance contract's omnibus clause defines an insured as any permissive user of a covered auto, including customers of a repair shop who do not have minimal liability coverage of their own. It excludes customers with minimal liability insurance of their own. But for the exclusion, Balls tells us, she would be a policy-defined insured. The certification order did not specify whether Ball had her own liability insurance or not, but the record indicates she did not and in its brief to this court, Wilshire states that Ball had no liability insurance of her own. In answering a certified question, the court does not presume facts outside those offered by the certification order, but we may consider uncontested facts supported by the record. *McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp.,* 2008 OK 66, ¶ 2, n. 4, 195 P.3d 35, 38 n. 4; *In re Harris,* 2002 OK 35, ¶ 4, n. 5, 49 P.3d 710, 713 n. 5.

**27.** *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Md.,* 1996 OK 105, ¶ 13, 928 P.2d 298, 302.

**28.** *Id.* at ¶ 13, at 303 (citations omitted).

**29.** *Air Liquide America Corp. v. Continental Cas. Co.,* 217 F.3d 1272, 1279–80 (10th Cir.2000). *See* the provisions of 15 O.S.2001 § 427, which state in pertinent part:

"In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:

\*       \*       \*       \*       \*       \*

3. An indemnity against claims or demands, or liability, expressly or in other equivalent terms, embraces the costs of defense against such claims, demands or liability incurred in good faith, and in the exercise of reasonable discretion.

4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity; but the person indemnified has the right to conduct such defense, if he chooses to do so."

**30.** *Nation, supra* note 23, at ¶ 18, at 882 (Summers, J., concurring).

**31.** *Tapp, supra* note 20, at ¶ 22, at 484.

**32.** *See id.*

**33.** 2002 OK 63, 54 P.3d 109.

**34.** *Id.* at ¶ 24, at 114.

**35.** *Id.* at ¶ 26, at 116.

**36.** *See State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523 (Mo.1995) (litigation defense not

ry omnibus clause displaces only those insurance policy provisions that are incompatible with the law's intent to provide minimal compensation to an injured third party. The person whose minimal coverage is law-mandated is not entitled to the insurer's performance of purely contractual obligations that stand outside the law's mandate. This rule gives effect to the public policy underlying the Compulsory Liability Insurance Law while refraining from unduly interfering with the parties' freedom to contract, which can be restricted only in the name of articulated public policy.[37]

¶ 19 Oklahoma's decisional law is by now firmly established that liability exclusions, no matter the identity of the class of persons excluded, which diminish the protection afforded by the Compulsory Liability Insurance Law will not be enforced as to minimal statutory liability coverage, except as permitted by existing law. Today's pronouncement, recognizing that the duty to defend is not a part of the Law's mandate, should not be taken by the insurance industry as a license to place or leave in place unenforceable exclusions in policies in a manner that misleads insureds as to the insurer's other, dependent contractual obligations. Should flagrant and persistent abuses arise, the court might find itself impelled to reconsider the point addressed by today's decision. It would be advantageous for all concerned if insurers would draft their policies to take into account today's pronouncement.

required where household exclusion invalidated by Financial Responsibility Law up to the statutory minimum); *Harleysville Mut. Ins. Co. v. Zurich–American Ins. Co.,* 157 N.C.App. 317, 578 S.E.2d 701 (2003) (same); *Transamerica Ins. Group v. State Farm Mut. Auto. Ins. Co.,* 492 F.Supp. 283 (D.Nev.1980) (same). *But cf. State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 513 A.2d 283 (Me.1986) (state's mandatory insurance statute requires liability coverage and imposes a duty to defend).

37. *Nation, supra* note 23, at ¶ 27, at 890 (Opala, J., concurring, with whom Watt, J., joined, concurring in the court's judgment).

38. *Badillo v. Mid Century Ins. Co.,* 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093; *Christian v. Am. Home Assurance Co.,* 1977 OK 141, ¶ 25, 577 P.2d 899, 904.

## V

## IN THE ABSENCE OF CONTROLLING LEGAL AUTHORITY MAKING THE LOANED VEHICLE EXCLUSION UNENFORCEABLE AS TO UM COVERAGE, AN INSURER WHO RELIES ON THE EXCLUSION DOES NOT ACT IN BAD FAITH

¶ 20 Ball alleged that Wilshire not only breached the insurance contract by delaying payment of her UM claim, but also violated an insurer's implied-in-law duty to its insured to act fairly and in good faith.[38] She hence alleged a bad faith tort claim against Wilshire, which was summarily dismissed by the federal district court. The Tenth Circuit has asked whether Oklahoma law is settled regarding an insurer's obligation to provide UM benefits to a person in Ball's position. We agree with the federal district court that Oklahoma law at this time does not provide a conclusive answer to this question.

¶ 21 The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.[39] The absence of any one of these elements defeats a bad faith claim.[40]

39. *See* Oklahoma Uniform Jury Instructions—Civ (2d) 22.2. This court along with the Court of Criminal Appeals is authorized by statute to prescribe and institute uniform instructions to be given in jury trials. 12 O.S.2001 § 577.1.

40. Under Oklahoma law, a tort claim for bad faith and a claim for breach of contract are separate and independent bases for recovery. *Taylor v. State Farm Fire & Cas. Co.,* 1999 OK 44, ¶ 9, 981 P.2d 1253, 1258. Where the tort claim is factually based on a coverage dispute as to which no controlling legal authority provides an indisputable resolution, a determination of the coverage dispute is unnecessary because the elements of unreasonableness and bad faith are not present as a matter of law.

¶ 22 The critical question in a bad faith tort claim is whether the insurer had a "good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding [or delaying] payment under the policy." [41] If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith.[42] The tort of bad faith hence does not prevent an insurer from denying, resisting or litigating any claim as to which the insurer has a reasonable defense.[43]i "Resort to a judicial forum is not *per se* bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit." [44]

¶ 23 The provisions of Oklahoma's UM statute, 36 O.S.2001 § 3636,[45] state that any motor vehicle liability policy issued with respect to a vehicle registered in this state or principally garaged in this state shall provide UM coverage "for the protection of persons insured thereunder." UM coverage may be rejected by a policyholder [46] in the manner provided by the statute.[47] Drummond ac-cepted UM coverage for vehicles owned by him as well as for one specifically described vehicle.

¶ 24 Ball contends that Oklahoma law is settled that regardless of how a person's liability coverage arises, whether by contract or by operation of the Compulsory Liability Insurance Law, any person on whose behalf liability proceeds must be paid is a person insured thereunder within the meaning of § 3636. In so arguing, Ball seeks to graft onto UM coverage the power of the Compulsory Liability Insurance Law to render a liability exclusion unenforceable.

¶ 25 While the Compulsory Liability Insurance Law clearly may override exclusions that violate the law's mandate of minimum *liability* coverage, nothing in extant jurisprudence precisely defines for other purposes the status of a person on whose behalf such coverage must by law be provided. As noted earlier in today's decision, we have expressly denied insured status to such a person for purposes of liability coverage in excess of the statutory minimum.[48] If the Compulsory Li-

41. *Newport v. USAA*, 2000 OK 59, ¶ 10, 11 P.3d 190, 195; *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109 (*quoting Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159).

42. *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223.

43. *Buzzard, supra* note 41, at ¶ 13, at 1109; *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 12, 681 P.2d 760, 762 ("A [bad faith] cause of action will not lie where there is a legitimate dispute."); *Christian, supra* note 38, at ¶ 26, at 905 ("We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions.").

44. *Buzzard, supra* note 41, at ¶ 13, at 1109 (*quoting* original statement in Christian, *supra* note 38, at ¶ 26, at 905).

45. The pertinent provisions of 36 O.S.2001 § 3636 provide:

"A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured...."

46. *See* the provisions of 36 O.S.2001 § 3636(G), which state in pertinent part:

"A named insured or applicant shall have the right to reject uninsured motorist coverage in writing...."

47. *See* the provisions of 36 O.S.2001 § 3636(I) for forms required before 1 April 2005 and 36 O.S.2001 § 3636(K) for forms required on or after 1 April 2005.

48. *O'Neill v. Long, supra* note 33, at ¶ 24, at 115 (holding that while a policy must provide mini-

ability Insurance Law does not make a person an insured under the policy for purposes of the very coverage to which the Compulsory Liability Insurance Law is directed, it is not unreasonable to question whether it has the power to confer that status for a completely separate coverage. Today we have declared that the Compulsory Liability Insurance Law does not confer insured status on a contractually-excluded person for purposes of an insurer-provided defense. We conclude that there is room for questioning whether the legislature intended that those on whose behalf minimal liability coverage must be paid thereby become persons insured thereunder as that phrase is used in § 3636.

¶ 26 Even in the absence of a violation of a law's express provision, an exclusion may nonetheless be invalid for nonconformity to the policy of the law.[49] The Loaned Vehicle Exclusion provides that an auto belonging to the named insured that is otherwise covered under the Wilshire policy becomes uninsured if driven by a person described in the Exclusion. The Wilshire policy's UM endorsement defines as an insured the named insured and any person occupying a covered auto. Ball would come within the definition of an insured *in the policy's UM insurance provisions* as an occupant of a covered auto but for the Loaned Vehicle Exclusion. The question thus arises whether the Loaned Vehicle Exclusion contravenes the public policy behind the UM legislation when it turns a covered auto into a "not covered" auto based

on the commercial nature of the relationship between the named insured and the person driving the auto.[50]

¶ 27 When interpreting automobile insurance contracts, the court strives to strike a balance between freedom of contract principles and the state's interest in protecting the public.[51] Statutorily mandated automobile insurance policies bear some characteristics of a public-law obligation under Oklahoma law and the full range of traditional freedom-of-contract principles do not apply.[52] Parties to an insurance contract are nevertheless free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability,[53] as long as their agreement does not contravene public policy. A contract violates public policy only if it clearly tends to injure public health, morals or confidence in the administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property.[54] Courts exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt.[55] The sources of Oklahoma's public policy are her jurisprudence, state legislative or constitutional provisions, and those provisions in the federal constitution that prescribe a norm of conduct for the state.[56]

¶ 28 A salient feature of our UM legislation, distinguishing it from compulsory liability insurance, is the latitude given to the

---

mum statutory liability coverage to an innocent third party for injuries caused by a person driving an insured vehicle in disregard of the named insured's instructions, the unauthorized driver was *"not an insured under the terms of [the] ... policy"*).

49. *Hartline, supra* note 23, at ¶ 16, at 771.

50. Although Ball does not advance a public policy argument that an occupant's UM coverage cannot be eliminated by an exclusion, we cannot fully address the certified question without considering whether there is controlling legal authority deciding this question. Again, the limited nature of our inquiry does not call for an exhaustive review of the public policy arguments, but only an examination sufficient to determine whether the matter stands unsettled.

51. *Nation, supra* note 23, at ¶ 27, at 890 (Opala, J., with whom Watt, J., joined, concurring in the court's judgment).

52. *Harkrider, supra* note 20, at ¶ 19, at 830.

53. *Shepard v. Farmers Ins. Co., Inc.,* 1983 OK 103, ¶ 2, 678 P.2d 250, 251.

54. *Anderson v. Reed,* 1928 OK 268, ¶ 22, 270 P. 854, 856.

55. *Camp v. Black Gold Petroleum Co.,* 1941 OK 371, ¶ 15, 119 P.2d 815, 817–18; *Johnston v. J.R. Watkins Co.,* 1945 OK 123, ¶ 12, 157 P.2d 755, 757.

56. *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 13, 176 P.3d 1204, 1212.

policyholder or applicant[57] to accept or reject UM coverage. Extensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder. When a policyholder completely rejects UM coverage, an occupant of a vehicle as to which no UM coverage is available has no independent grounds to claim UM benefits.[58] If the legislative intent with respect to UM coverage is satisfied *without any* such coverage in a policy, it could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage.

¶ 29 Our decisions interpreting insurance contracts in light of § 3636 have been carefully crafted to protect and enforce the policyholder's choice to purchase UM protection. Two lines of cases, one related to "stacking" and the other directly on coverage, are relevant. The former, beginning with *Keel v. MFA Insurance Company,*[59] considered the circumstances under which a person could stack UM coverage provided by two or more policies having some relation to the person or vehicle involved in a collision. We held in those cases that a claimant must be allowed to recover under multiple policies for which multiple UM premiums had been paid, provided that the claimant is an insured under each policy.[60] That determination, we said, is to be made by reference to the terms of the insurance contract, which determine who is an insured thereunder.[61] Accordingly, in *Babcock v. Adkins,*[62] we held that occupants

of an insured motor vehicle involved in an accident who are entitled to UM coverage solely because of their status as passengers may not stack UM coverage under separate policies purchased by the owner of the involved vehicle for his or her other vehicle or vehicles unless those passengers also qualify as insureds under those separate policies.[63]

¶ 30 The principal cases that directly address coverage issues relating to exclusions begin with *Cothren v. Emcasco Insurance Company,*[64] where we first considered whether an exclusionary clause was enforceable in light of the express language and public policy of § 3636. In *Cothren,* the claimant was injured while riding as a passenger on a motorcycle. The motorcycle was owned by the claimant's parents but was not listed as an insured vehicle on their insurance policy. The UM coverage defined as an insured the named insured, any designated insured and, where residents of the same household, the relatives of either. Claimant was a defined insured as a resident relative. The policy excluded from UM coverage injury to an insured while occupying a non-insured highway vehicle owned by the insured or a resident relative of the insured's household. We held that the exclusion was inconsistent with the purpose and philosophy of mandatory UM coverage because the UM statute does not sanction exceptions dependent on the location of an insured at the time of injury.[65]

¶ 31 In *Shepard v. Farmers Insurance*

**57.** The statute specifies that the decision to accept or reject UM coverage is to be made by the policyholder or *applicant.* Use of the word policyholder in this context hereinafter should be taken to include an applicant as well.

**58.** The provisions of 36 O.S.2001 § 3636(H) state in pertinent part:
"... Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance."

**59.** 1976 OK 86, 553 P.2d 153. *See also Richardson v. Allstate Ins. Co.,* 1980 OK 157, 619 P.2d 594 (multiple coverage collectable when multiple

premiums paid); *Lake v. Wright,* 1982 OK 98, 657 P.2d 643 (insured allowed to stack where multiple premiums paid).

**60.** *Keel, supra* note 59, at ¶ 12, at 156.

**61.** *Id.* at ¶ 10, at 155–156.

**62.** 1984 OK 84, 695 P.2d 1340.

**63.** *Id.* at ¶ 14, at 1343.

**64.** 1976 OK 137, 555 P.2d 1037.

**65.** *Id.* at ¶ 13, at 1039–40 (*quoting Nygaard v. State Farm Mut. Auto. Ins. Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974)).

*Company*,[66] a response to a certified question, the validity of a UM exclusion was at issue when a deceased's personal representatives sought to stack UM coverage under two policies issued to the deceased's parents. Neither policy insured the vehicle the deceased was driving at the time of the accident. The parents' policies contained an exclusion which denied coverage for a relative of the insured living in the same household if such relative or his/her spouse owned an automobile. The deceased apparently owned her own automobile. The insurer argued that the deceased was not an insured under the parents' polices by reason of the exclusion and hence not entitled to UM benefits under the parents' policies. Plaintiffs argued the exclusion violated the public policy expressed in the UM statute. After clarifying that stacking was not available unless the claimant was an insured under each policy sought to be stacked, we considered whether the exclusionary language in the parents' policies, which clearly eliminated coverage for the deceased, contravened the public policy of § 3636. Observing that neither the UM statute nor relevant decisional law "dictates mandatory classes of insureds," [67] we held that an exclusion which eliminates UM coverage for a person who owns an automobile contravenes neither the express language nor the underlying policy of § 3636. That policy—to provide coverage for tortious conduct which would otherwise go uncompensated—is adequately addressed, we said, by the exclusion's vehicle-ownership condition, which "triggers operation of our mandatory insurance statute and clearly places the burden of carrying automobile insurance upon automobile owners." [68]

¶ 32 In *Graham v. Travelers Insurance Company*,[69] we considered the validity of a partial rejection of UM coverage in light of the public policy expressed in the UM statute. In *Graham*, a company's automobile insurance policy limited UM coverage to owned autos even though the company carried liability insurance for its employees while using an auto not owned by the company to perform company business. An employee, injured in a collision with an uninsured motorist while driving his personal vehicle on company business, claimed he was entitled to UM benefits under the company policy despite the unambiguous contract language restricting UM coverage to company-owned vehicles. This was so, Graham urged, because the § 3636 requires UM coverage to be coextensive with liability coverage. We defined the issue as whether § 3636 "requires [UM] coverage over every vehicle this commercial auto policy covers for liability." [70] In upholding the restriction of UM coverage to company-owned vehicles, we cited several factors, including the fact that Graham was not a party to the insurance contract and did not pay premiums for coverage under the company's insurance policy and the fact that the purpose of the contract from the company's standpoint was to protect itself from *respondeat superior* liability in the event one of its employees caused an accident while performing duties for the company. Yet, as in *Shepard*, the critical factor in upholding the UM coverage restriction appeared to be Graham's ownership of his own vehicle. We found no public policy violated by the UM limitation because by law Graham was required to "insure his vehicle for liability, and § 3636 provided him the opportunity to accept or reject UM/UIM coverage for his personal protection." [71]

¶ 33 In *State Farm Mutual Automobile Insurance Company v. Wendt*,[72] we refused to allow an insurer to eliminate UM protection purchased by the named insured for himself and a resident family member by narrowly defining the term "uninsured motor vehicle." We stated in *Wendt* that "once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and

66. *Supra* note 53.

67. *Id*. at ¶ 8, at 252.

68. *Id*.

69. 2002 OK 95, 61 P.3d 225.

70. *Id*. at ¶ 15, at 228.

71. *Id*. at ¶ 20, at 230.

72. 1985 OK 75, 708 P.2d 581.

impermissively [*sic* ] limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 § 3636." [73] The claimant in *Wendt* was clearly a defined insured under the policies at issue either as a named insured or as a resident relative. The policy's definition of an uninsured motor vehicle hence took away coverage to which the claimant was entitled as a policy-defined insured.

¶ 34 Case-law development in the area of permissible UM exclusions is clearly limited in number and scope.[74] While it would be fanciful to deny that the trajectory of decisional law is anything but protective of UM coverage, it is certain that the outer boundaries of that protection have not been fully explored. In *Cothren* and *Wendt*, we rejected as contrary to the public policy expressed in the UM statute exclusions that limited UM coverage for the named insured or resident members of his or her family based upon the particular vehicle the insured was occupying when injured or by narrowly defining what constitutes an uninsured motor vehicle. In *Shepard*, we upheld as consistent with the UM statute's public policy an exclusion that eliminated UM coverage for a Class One insured [75] who owned her own vehicle and hence had an opportunity to purchase UM coverage of her own. In all three of these cases we considered the effect of an exclusion on a Class One insured and our decision was careful to protect the policyholder's choice of self and family protection.[76] No similarly clear expression can be found in our case law obligating the insured and insurer to provide UM protection to persons whose claim to coverage arises solely by reason of their occupancy of a vehicle belonging to the named insured.

¶ 35 In *Graham*, we held that a company that purchased liability coverage for any auto not owned by the company when the auto was used by an employee in the performance of company business, but which limited UM

---

**73.** *Id.* at ¶ 4, at 583.

**74.** The Court of Civil Appeals has also issued opinions regarding exclusions from UM coverage. In *Ameen v. Prudential Prop. and Cas. Ins. Co.*, 2005 OK CIV APP 23, 110 P.3d 86, the claimant was listed by name as a resident relative under his parents' automobile insurance policy and his parents paid a premium for his coverage. The UM endorsement in pertinent part defined as an insured the named insured or a resident relative while operating a non-owned *car* or while on foot. The claimant was injured in an accident with an uninsured motorist while operating a motorcycle and the insurance company denied coverage since he was neither in a car nor on foot. The intermediate appellate court held that claimant was entitled to UM benefits because policy provisions that restrict legislatively mandated UM coverage based upon the particular vehicle an insured is occupying at the time of injury violate the public policy of the UM statute. *Id.* at ¶ 14, at 90. The court rejected *Shepard* and *Graham* as controlling because unlike the claimants in those cases, Ameen did not own his own vehicle and hence had no opportunity to accept or reject UM coverage of his own. *Id.* In *Nat'l Amer. Ins. Co. v. Vallion*, 2008 OK CIV APP 41, 183 P.3d 175, the claimant was an employee of the Edmond Public School District. The district insured its vehicles under a policy in which the UM endorsement unambiguously excluded as an insured any person, other than the named insured, occupying a covered vehicle if that person owned a motor vehicle subject to Oklahoma's or any other state's financial responsibility law. The claimant, who owned two vehicles insured under an insurance policy issued in compliance with the Oklahoma Financial Responsibility Act, was injured while riding in a district-owned vehicle. Claimant had UM coverage under one of his personal automobile insurance policies. Insurer denied the claim based on the UM exclusion. Relying on *Shepard* and *Graham*, the intermediate appellate court agreed with insurer, that the exclusion was enforceable, holding that it did not contravene the legislative intent of the UM statute because claimant's ownership of his own personal vehicles subjected him to the mandatory provisions of the Compulsory Liability Insurance Act and provided him with the opportunity to either accept or reject UM benefits under his own automobile insurance policies. *Id.* at ¶ 17, at 180.

**75.** Class One insureds are the named insured and resident relatives. *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, ¶ 12, 89 P.3d 1051, 1054.

**76.** *Graham*, *supra* note 69, at ¶ 20, at 230 (stating that § 3636 provides the *policyholder* with "the opportunity to accept or reject UM/UIM coverage *for his personal protection*." [emphasis added] ); *Moser v. Liberty Mut. Ins. Co.*, 1986 OK 78, ¶ 4, 731 P.2d 406, 408 (stating that "the intent of the uninsured motorist legislation is *to afford to one insured under his own liability insurance policy* the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance." [emphasis added] ).

coverage to company-owned vehicles, did not violate the UM statute. Graham was using his own vehicle when the accident occurred and we pointed out that he would have had an opportunity to acquire his own UM coverage. Whether that was the decisive factor, in the absence of which we would have invalidated the exclusion, cannot be determined with certainty. Because the facts did not require it, we did not consider that the exclusion would also have eliminated UM coverage for Graham even if he did not own a car of his own and had been driving a car borrowed from someone who had rejected UM coverage. Whether the other factors we discussed in *Graham*, that Graham was not a party to the insurance contract and did not pay premiums for the coverage at issue and the fact that the purpose of the contract was to protect the named insured from *respondeat superior* liability, would have led to the same result must await an appropriate case.

¶ 36 In short, a review of our extant UM jurisprudence reveals (1) a public policy that is protective of UM coverage for Class One insureds and (2) a willingness to uphold UM exclusions which by their express terms are limited to individuals who own a vehicle and who have thus had an opportunity to purchase their own UM coverage. We have not yet addressed whether the public policy expressed in § 3636 is offended by an exclusion that applies to Class Two insureds regardless of vehicle ownership.[77] Inasmuch as the insurer has made payment to the claimant and the law had not been settled by requiring payment under this fact pattern, a bad-faith claim will not lie against the insurer.

## VI

### SUMMARY

¶ 37 In answer to the first certified question, we declare that the Loaned Vehicle Exclusion contravenes the Compulsory Liability Insurance Law and is unenforceable as to the statutorily-mandated minimum amount of liability coverage. In answer to the second certified question, we declare that the

Compulsory Liability Insurance Law does not impose on an insurer a duty to defend a person whose liability coverage arises by operation of the Compulsory Liability Insurance Law and not under the terms of the insurance contract. The third certified question does not require a response in light of our answer to the second certified question. In answer to the fourth certified question, we declare that there has been no controlling legal authority in Oklahoma holding that the Loaned Vehicle Exclusion cannot eliminate UM coverage for a person in Ball's position and tort liability for withholding or delaying payment of UM benefits in reliance on the Exclusion will not lie in this case.

¶ 38 **CERTIFIED QUESTIONS AS CONSOLIDATED AND REFORMULATED ANSWERED**

¶ 39 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, WINCHESTER and REIF, JJ., concur.

¶ 40 COLBERT, J., concurs in result.

---

77. Our conclusion that the law stands unsettled is limited to the facts presented in the Tenth

Circuit's certification order.